Sheila SIMPSON, et al.,
Plaintiffs–Appellees,

v.

David JAMES, et al.,
Defendants–Appellants.

No. 89–2617.

United States Court of Appeals,
Fifth Circuit.

June 14, 1990.

As Amended on Denial of Rehearing
July 6, 1990.

Victor Hlavinka, Atchley, Russell, Waldrop & Hlavinka, Texarkana, Tex., for defendants-appellants.

Charles H. Clark, Tyler, Tex., for plaintiffs-appellees.

Before WISDOM, JOHNSON, and DUHÉ, Circuit Judges.

WISDOM, Circuit Judge:

This appeal concerns a malpractice suit brought by the sellers of corporate assets against the partners of a law firm that represented both the buyers and the sellers in the transaction. The plaintiffs alleged two incidents of negligence on the part of the attorneys: the handling of the original sale and the subsequent restructuring of the buyers' note in favor of the plaintiffs. After a jury trial, the court rendered judgment in favor of the plaintiffs, awarding the sellers $100,000 for each act of negligence. We affirm.

## STATEMENT OF THE CASE

The plaintiffs, Sheila Simpson and Lovie and Morelle Jones, were the sole stockholders in H.P. Enterprises Corporation.[1] The business of H.P. Enterprises was operating and franchising catfish restaurants. Sheila Simpson's late husband, Buck Simpson, handled most of the business affairs of the corporation until his death. Mrs. Simpson then took over operation of the company, but she later decided to sell the corporation to devote more time to her children.

Mrs. Simpson turned to Ed Oliver for help in selling the corporation. Since 1968, Oliver practiced in Texarkana, Texas, with the firm now known as Keeney, Anderson & James. He had represented Mr. Simpson for many years in matters relating to H.P. Enterprises and in personal matters. In November 1983 a group of investors approached Oliver to inquire into purchasing H.P. Enterprises. Oliver formed a corporation for the investors, Tide Creek, and drew up the legal documents to transfer the assets of H.P. Enterprises to Tide Creek.[2] Oliver was the sole source of legal advice for both parties.

The price agreed upon was $500,000, of which $100,000 was paid at the execution of the sale. As security for the sellers, Oliver provided for a lien on the stock of Tide Creek, personal guarantees of the buyers on the corporation's $400,000 note to the sellers, and certain restrictions on operation of the business. The sale took place on November 18, 1983. After the transaction, Mr. Oliver's firm continued to represent Mrs. Simpson in estate and tax matters. During this time, all of her business records were kept at the firm's office.

Thereafter, two significant events occurred. In April 1984 a fire destroyed Tide Creek's commissary, which contained its inventory. David James, a partner in Oliver's firm, represented Tide Creek in recovering over $200,000 in insurance proceeds. In October 1984, Oliver left the firm to practice in Houston. The firm was renamed Keeney, Anderson, & James. An associate in the firm, Fred Norton, took over tax and estate work for Mrs. Simpson.

Under the original terms of the sale arranged by Oliver, a $200,000 note by Tide Creek in favor of the plaintiffs became due on November 18, 1984. Tide Creek did not meet this obligation. On January 29, 1985, the plaintiffs visited David James at his office. James told them that Tide Creek was having financial difficulties, and that the company could pay them only $50,000 at that time. James restructured the note between the parties. At that meeting, Mrs. Simpson asked James what he would do if her interests and those of Tide Creek diverged. James replied: "We would have to support you".

---

**1.** Sheila Simpson owned 87.5 percent of the shares; Lovie Jones owned 12.5 percent.

**2.** After the sale, H.P. Enterprises Corporation was dissolved.

In the Fall of 1985, Mrs. Simpson became concerned when she heard rumors of Tide Creek's impending bankruptcy. She called Fred Norton, an associate at the firm, and Norton arranged a meeting for her with David James. James advised Mrs. Simpson that her interests were in conflict with those of Tide Creek. He told her that she should find another lawyer to represent her; James was representing Tide Creek.

The plaintiffs received their last payment from Tide Creek on October 1, 1985. Tide Creek then filed for bankruptcy. The plaintiffs filed a claim in bankruptcy court, but received nothing. Their efforts to enforce the personal guarantees proved fruitless; the guarantors filed for personal bankruptcy.

Mrs. Simpson filed suit against the three partners of Keeney, Anderson, and James on January 16, 1987.[3] The suit alleged that acts of negligence by Oliver and James proximately damaged the plaintiffs. The plaintiffs alleged that the defendants had a conflict of interest that prevented them from acting in the plaintiffs' best interests. The jury found that Ed Oliver was negligent in his representation of Mrs. Simpson and the Joneses and awarded them $100,000 damages.[4] It also found David James liable for negligence for his role in restructuring the delinquent note and awarded $100,000 damages to Simpson. The defendants moved for a judgment notwithstanding the verdict, or in the alternative, for a new trial. The court denied both motions.

## DISCUSSION

### 1. Statute of Limitations

Oliver's involvement with the sale ended on November 18, 1983. The plaintiffs filed suit on January 16, 1987. The defendants contend that the suit is barred by the statute of limitations.

■ In this diversity case, Texas law supplies the applicable statute of limitations. Texas provides for a two year limitations period for legal malpractice actions.[5] Moreover, the "discovery rule" applies in these cases. The effect of this rule is that limitations run from the date the plaintiff discovers or should have discovered, in the exercise of reasonable care and diligence, the nature of the injury.[6]

■ Initially, the defendants argue that the plaintiffs waived the benefit of the discovery rule because they did not affirmatively plead its application in their complaint. Citing *Woods v. William M. Mercer, Inc.,*[7] the defendants argue that under Texas law "[a] party seeking to avail itself of the discovery rule must ... plead the rule ...". However, federal law governs the pleading requirements of a case in federal court.[8] Under Rule 8 of the Federal Rules of Civil Procedure, it is enough that the plaintiff plead sufficient facts to put the defense on notice of the theories on which the complaint is based. The plaintiffs have satisfied that burden.

The jury specifically found that the "plaintiffs did not discover, or could not have discovered, in the exercise of reasonable care and diligence, the facts upon which they base[d] their negligence claim against Ed Oliver before January 16, 1985". The defense moved for JNOV on this issue, which motion was denied by the district court. We do not reverse a jury's decision unless consideration of all of the evidence and inferences favorable to the nonmoving party convinces us that no reasonable jury could arrive at a contrary verdict.[9]

---

**3.** The complaint was amended on April 9, 1987 to include Lovie and Morelle Jones as plaintiffs.

The court's instructions to the jury and the interrogatories, however, use January 16 as the crucial date for resolving the limitations issue. The defendants never objected; they may not raise a challenge to this for the first time on appeal.

**4.** According to her percentage of ownership of the former company, Mrs. Simpson would receive $87,500 of the award.

**5.** *Willis v. Maverick,* 760 S.W.2d 642, 644 (Tex. 1988).

**6.** *Id.*

**7.** 769 S.W.2d 515, 518 (Tex.1988).

**8.** *J.M. Blythe Motor Lines Corp. v. Blalock,* 310 F.2d 77 (5th Cir.1962).

**9.** *Boeing Co. v. Shipman,* 411 F.2d 365, 375 (5th Cir.1969) (en banc).

The defendants argue that even applying the discovery rule, the plaintiffs' claims are barred. With respect to the Jones's claim, the defense asserts that the Joneses were aware of problems surrounding the 1983 sale even before the November 1984 default. Although Jones admits to an awareness of Tide Creek's financial difficulties in 1984, this does not necessarily reflect upon Oliver's competence in handling the sale. The jury also found that Mrs. Simpson did not know and should not have known of the alleged negligence before January 1985. Evidence presented at the trial indicated that Simpson had little business experience, that James reassured her of his loyalty to her and that she relied on James with regard to the Tide Creek matter. The evidence is sufficient to uphold the jury's finding.

### 2. Evidence to Satisfy the Elements of the Cause of Action

In Texas, an attorney malpractice claim is based on negligence.[10] A plaintiff in a malpractice action must prove four elements to recover: that 1) the defendant owed a duty to the plaintiff; 2) the defendant breached that duty; 3) the breach proximately caused the plaintiff injury; and 4) damages resulted.[11] The defendants challenge the existence of a number of these elements.

### A. Attorney–Client Relationship: James and Simpson

The defendants argue that no attorney-client relationship existed between David James and Sheila Simpson, and consequently, James owed no duty to her that could form the basis of malpractice liability. By interrogatory, the jury found that an attorney-client relationship did exist between the two with respect to the renewal note of January 29, 1985. We review the jury's

finding with deference, and will reverse only if no reasonable jury could have so found.

An attorney-client relationship depends on a contract, express or implied, between the parties. "A contract of employment may exist merely as a result of an offer or request made by the client and an acceptance or assent thereto by the attorney."[12] It does not depend upon the payment of a fee.[13] When an attorney-client relationship is established, the relation generally terminates once the purpose of the employment is completed, absent a contrary agreement.[14]

The evidence adduced at trial indicated that Ed Oliver represented the plaintiffs' business interests in H.P. Enterprises before and at the time of the sale of its assets to Tide Creek. After Oliver left, the firm represented Mrs. Simpson in tax and estate matters and continued to maintain all of her business records. Mrs. Simpson testified that on January 29, 1985, at the time the note was restructured, and on a subsequent occasion, James encouraged her about Tide Creek's future economic viability. She added that she relied on those assurances. Significantly, Simpson stated that James advised her that she was entering into a good deal in agreeing to the restructuring. At the same meeting, James assured Simpson that he would stand by her in the event of a conflict of interest between Simpson and Tide Creek. James stated that at no time did Mrs. Simpson specifically ask him to represent her interests against Tide Creek. He testified that he never gave any advice to Mrs. Simpson and never charged her for his time. Nevertheless, the evidence was sufficient for a reasonable jury to conclude that an attorney-client relationship existed, as manifested through the parties' conduct.

---

10. *Cosgrove v. Grimes,* 774 S.W.2d 662, 664 (Tex. 1989).

11. *Id.* at 665.

12. *State v. Lemon,* 603 S.W.2d 313, 318 (Tex. App.—Beaumont 1980, no writ) (quoting *Prigmore v. Hardware Mut. Ins. Co.,* 225 S.W.2d 897, 899 (Tex.App.—Amarillo 1949, no writ)).

13. *Id.*

14. *Dillard v. Broyles,* 633 S.W.2d 636 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.), *cert. denied,* 463 U.S. 1208, 103 S.Ct. 3539, 77 L.Ed.2d 1389 (1983).

### B. Negligence

■ Under Texas law, an attorney "is held to the standard of care which would be exercised by a reasonably prudent attorney".[15] This is not a result-oriented analysis; an attorney will not be liable for undesirable effects of a decision that was reasonable at the time it was made.[16]

■ The plaintiffs alleged negligent acts that arose out of the defendants' conflicts of interest in representing both sides of a transaction. Liability may not be premised solely on the fact that an attorney represented both buyer and seller; after full disclosure by the attorney, it may be proper in some circumstances for an attorney to represent both sides in a real estate transaction.[17]

■ Both sides in this case presented expert testimony on the propriety of Oliver's representing both the plaintiffs and the investors from Tide Creek. Of course, in case of conflicting expert testimony, the jury is entitled to make credibility determinations and to believe the witness it considers more trustworthy.[18] Although the defense maintains that Oliver merely reduced a settled agreement to writing, the plaintiffs presented evidence suggesting that Oliver negotiated the sale price for the assets of H.P. Enterprises and determined the "mechanics" of the sale. Moreover, the plaintiff's expert witness, John Ament, testified that Oliver did not adequately protect Simpson against the possibility that Tide Creek would fail financially. For example, he stated that instead of a lien on Tide Creek stock, Oliver should have provided for a lien on the assets. Oliver also might have named the plaintiffs as beneficiaries of insurance policies. Ament added that the interests of the plaintiffs and buyers varied significantly from the beginning. Although the evidence of Oliver's negli-

gence is not overwhelming, we are not persuaded that the jury's conclusion is unreasonable.

■ David James prepared the instrument whereby Tide Creek's note in favor of Simpson and Jones was restructured. Simpson argues that James did not disclose Tide Creek's desperate financial condition, did not explain other options to her, and did not pursue over $200,000 insurance money for her benefit.[19] The plaintiff's expert also testified that it was improper for James to represent parties with such divergent interests: a creditor seeking recovery and a debtor in default. We believe that this evidence is sufficient to uphold the jury's finding of negligence.

### C. Whether Attorney Negligence Proximately Caused the Plaintiffs' Damages.

The plaintiffs have the burden to prove that but for the defendants' negligence, they would have recovered the payments due. The jury found that Oliver and James, by their individual acts of negligence, each caused the plaintiffs $100,000 damages. We review the record to determine whether the plaintiffs proved that amount of damages.

■ It is apparent that proper conduct on the part of Oliver could have averted the loss of at least $100,000. The plaintiff's expert accountant testified that the sellers of the corporate assets were not adequately protected. Protection could have been provided by a lien on the conveyed assets or by naming the plaintiffs as beneficiaries of property insurance. The evidence is sufficient on this issue.

■ Whether the plaintiffs proved damages as a result of James's conduct is a

---

15. *Cosgrove v. Grimes,* 774 S.W.2d 662, 664.

16. *Id.* at 665.

17. *Dillard v. Broyles,* 633 S.W.2d at 642.

18. *Gibraltar Sav. v. Ldbrinkman Corp.,* 860 F.2d 1275, 1297 (5th Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 2432, 104 L.Ed.2d 988 (1989).

19. This money was obtained for Tide Creek by David James as a result of a settlement after fire destroyed the commissary building in April 1984.

closer question. The plaintiff's expert accountant testified that as of March 1985, Tide Creek had combined equity of over $368,000.[20] His estimate was based on internal corporation figures that were not verified. Had the plaintiffs foreclosed on Tide Creek, however, they would have taken it back with over $477,000 in worthless accounts receivable. Moreover, it is undisputed that as of September 30, 1985, Tide Creek had equity of − $483,427.

However, the plaintiffs presented evidence that James was involved in recovering over $200,000 in insurance proceeds after a fire destroyed the restaurant's commissary. As argued by the plaintiff and admitted by the defendants' expert witness, James could have seized the insurance proceeds to satisfy the delinquent note. Perhaps because of a conflict of interest, James did not mention this possibility to the plaintiffs. We conclude that the plaintiffs proved damages caused by James.

### 3. *Jury Instructions*

The defendants object to the trial court's jury instructions. In reviewing the jury instructions, we are mindful that trial judges are afforded much discretion in instructing juries.[21] This Court will not reverse a judgment because of a challenged jury instruction unless "the charge as a whole 'leaves us with substantial and ineradicable doubt whether the jury has been properly guided in its deliberations' ".[22]

The defendants argue that the instructions allowed the jury to award a double recovery. With respect to Oliver and James, the court asked the jury what amount of money, if any, would compensate the plaintiffs for any damages caused by the defendant. The question was asked twice: once for Oliver and once for James. The trial judge specifically cautioned the jury that it was "not to award damages twice. [I]n awarding damages, if any, for Mr. James's negligence, if any, you are not to include the same damages previously awarded ..., if any, for Mr. Oliver's negligence, if any." We reject the defendants' challenge to the instructions.

### CONCLUSION

We uphold the court's judgment due in large part to our deference to the jury's findings on the controverted issues. The evidence was sufficient for a reasonable jury to find the elements of a malpractice cause of action against the defendants based on the actions of Oliver and James.

**AFFIRMED.**

---

**20.** The defendants urge that the trial court abused its discretion in admitting in evidence an exhibit that purported to establish the value of the assets of Tide Creek as of March 31, 1985. The plaintiffs' expert accountant compiled the information presented in the exhibit from internal corporate records. The defendants argue that under Texas law, an expert's opinion may not be admitted in evidence if based solely on hearsay, even if that information is of the type upon which experts in that field customarily rely. *Moore v. Grantham*, 599 S.W.2d 287 (Tex. 1980). State law does not guide our examination of this issue. "[Q]uestions concerning the admissibility of evidence in federal court are governed by the Federal Rules of Evidence." *Dawsey v. Olin Corp.*, 782 F.2d 1254, 1262 (5th

Cir.1986). Rule 703 states that the facts or data used by an expert in forming an opinion on a question need not be admissible in evidence "[i]f of a type reasonably relied upon by experts in the particular field ...". We find no abuse of discretion by the trial judge in this respect.

**21.** *Mayo v. Borden*, 784 F.2d 671, 672 (5th Cir. 1986).

**22.** *McCullough v. Beech Aircraft Corporation*, 587 F.2d 754, 759 (5th Cir.1979) (quoting *Kyzar v. Vale Do Ri Doce Navegacai, S.A.*, 464 F.2d 285, 290 (5th Cir.1972), *cert. denied*, 410 U.S. 929, 93 S.Ct. 1367, 35 L.Ed.2d 591 (1973)).