# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 13, 2008

Charles R. Fulbruge III
Clerk

No. 05-11450

TIG INSURANCE CO.,

Plaintiff–Appellant,

v.

AON RE, INC.,

Defendant–Appellee.

Appeal from the United States District Court
for the Northern District of Texas

Before GARWOOD, DENNIS, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

TIG Insurance Company has sued its broker, Aon Re, Inc., for failing to provide complete information to a reinsurer with whom TIG negotiated a reinsurance treaty. The treaty was rescinded as a result of the incomplete information, and TIG asserts causes of action against Aon Re for negligence, negligent misrepresentation, breach of fiduciary duty, and common-law indemnity. TIG appeals the district court's summary judgment that TIG take nothing. We affirm.

I

In recounting the summary judgment evidence, the facts will be stated in the light most favorable to TIG.[1] TIG provided workers' compensation insurance policies to employers nationwide, and it reinsured policies issued by other insurance companies, which included reinsurance business assumed from Virginia Surety Company. TIG's general practice was to retain liability for individual workers' compensation claims up to a cap of $1 million and to purchase excess loss reinsurance to cover claims exceeding that amount.

TIG retained Aon Re, Inc. to act as its agent or intermediary in soliciting and negotiating proposals for reinsurance. TIG provided Aon Re with information regarding TIG's workers' compensation business, including the relevant Virginia Surety historical loss data. Aon Re used this information to prepare a package of underwriting information to send to representatives of various reinsurance companies. In May 1998, Aon Re sent an information packet to WEB Management LLC, an underwriter that was acting as an agent for United States Life Insurance Co. (U.S. Life). In Aon Re's May 5, 1998 cover letter to WEB, Aon Re stated that the Claims Diskette contained "Virginia Surety [loss data] since 1994." In accordance with TIG's policies, Aon Re provided a copy of the packet to TIG for its files in May 1998. It is disputed whether this packet included the diskettes.

In June 1998, Aon Re representatives met with TIG representatives to discuss quotes Aon Re had received. TIG expressed interest in WEB's quote on behalf of U.S. Life as well as in proposals received from reinsurer Swiss Re, with whom TIG was dealing directly. At this time, concerns were expressed by TIG representatives that the data Aon Re had received from TIG and had sent to the

---

[1] See Breen v. Tex. A&M Univ., 485 F.3d 325, 331 (5th Cir. 2007) ("In determining whether summary judgment is appropriate, we view all of the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.").

reinsurance market was incomplete. TIG's vice president in charge of its workers' compensation division reviewed a May 13, 1998 letter from TIG's actuary criticizing the quality of Aon Re's reinsurance submission, and specifically commented in an email on June 19, 1998 that he "want[ed] to make sure the data AON sent to the market [was] good" because WEB's quote was "out of line on the low side" compared to the Swiss Re quote and quotes from other reinsurers.

Regardless of these concerns, TIG accepted U.S. Life's bid on June 29, 1998, and coverage was bound effective April 1, 1998. The reinsurance treaty subsequently signed by TIG on October 6, 1998 and by WEB on U.S. Life's behalf on November 12, 1998 applied to losses occurring in the three year period commencing April 1, 1998, subject to the treaty being cancelled at any time by TIG. TIG cancelled the reinsurance treaty on January 1, 1999 prospectively, but the treaty continued in force to cover claims arising out of losses that occurred between April 1, 1998 and January 1, 1999.

U.S. Life stopped paying claims under the reinsurance treaty in the summer of 2001 because an audit of TIG's operations had not been completed and TIG had not provided requested information. TIG demanded arbitration under the terms of the treaty, claiming outstanding payments in the amount of nearly $9 million were due, and proceedings commenced. Aon Re was not a party to the arbitration.

On February 21, 2003, in its preliminary position statement in the arbitration, U.S. Life stated for the first time that it had the right to rescind the reinsurance treaty because Aon Re had provided it with "materially incomplete" loss data by omitting "the loss data for the entire Virginia Surety segment," which comprised a significant portion of TIG's insurance business. TIG disputed the assertions that the data was missing and that it was material, but the arbitration panel found in favor of U.S. Life and specifically stated in its findings

of fact that Aon Re, as TIG's agent, had omitted the information regarding the Virginia Surety historical loss data.

The arbitrators determined that U.S. Life was entitled to rescind the treaty with regard to the Virginia Surety segment of TIG's business, that the treaty was "void ab initio" to that extent, but the remainder was valid and enforceable. The arbitration panel issued a final award that directed TIG to return to U.S. Life $4,720,836 plus interest of $661,910, for claims that U.S. Life had previously paid for Virginia Surety claims, and U.S. Life was required to return to TIG a premium of $6,443,103 plus $1,872,793 of interest. Therefore, because of the rescission of the Virginia Surety-related portion of the reinsurance treaty, TIG owed U.S. Life $5,382,746 and U.S. Life owed TIG $8,315,896, with the net result that U.S. Life paid TIG $2,933,150.

TIG filed the instant lawsuit against Aon Re on June 15, 2004, claiming negligence, negligent misrepresentation, breach of fiduciary duty, and seeking common-law indemnity. TIG also sought declaratory relief contending that Aon Re was obligated to reimburse and indemnify TIG for unreinsured liability. TIG also requested attorneys' fees. TIG filed a partial summary judgment motion asserting that Aon Re should be collaterally estopped from litigating issues resolved in the arbitration proceeding. Aon Re filed a summary judgment motion contending that (1) TIG's negligence, negligent misrepresentation, and breach of fiduciary claims were barred by statutes of limitations; (2) the discovery rule does not apply to defer accrual of these causes of action; and (3) TIG's common-law indemnity claim fails as a matter of law. The district court denied TIG's partial summary judgment motion on the collateral estoppel issue and granted Aon Re's summary judgment motion on the statute of limitations, discovery rule, and common law indemnity issues. The district court determined that it was unnecessary to address the other issues presented in the motions, and the court entered judgment that TIG take nothing.

TIG now appeals the denial of its partial summary judgment motion and the summary judgment in Aon Re's favor. Because we affirm the district court's summary judgment on the statute of limitations, discovery rule, and common-law indemnity issues, we do not reach the other issues.

## II

We review a grant of summary judgment de novo, applying the same standard as the district court.[2] Summary judgment should be rendered if the pleadings, discovery, admissions, "and any affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."[3]

## III

We first consider limitations. Both parties agree that Texas law governs this issue. Negligence and negligent misrepresentation claims must be brought "not later than two years after the day the cause of action accrues,"[4] and breach of fiduciary duty claims must be brought "not later than four years after the day the cause of action accrues."[5] As we have noted, TIG filed this suit on June 15, 2004.

Under Texas law, the question of when a cause of action accrues is a matter of law for the court to decide,[6] and "a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered

---

[2] Id.

[3] FED. R. CIV. P. 56(c).

[4] TEX. CIV. PRAC. & REM. CODE § 16.003(a); see also KPMG Peat Marwick v. Harrison Cty. Housing Fin. Corp., 988 S.W.2d 746, 750 (Tex. 1999); HECI Exploration Co. v. Neel, 982 S.W.2d 881, 885 (Tex. 1998).

[5] TEX. CIV. PRAC. & REM. CODE § 16.004(a)(5) ("A person must bring suit on the following actions not later than four years after the day the cause of action accrues: . . . breach of fiduciary duty.").

[6] Holy Cross Church of God in Christ v. Wolf, 44 S.W.3d 562, 566-67 (Tex. 2001).

until later, and even if all resulting damages have not yet occurred."[7] The Supreme Court of Texas has also said that "[a] cause of action generally accrues, and the statute of limitations begins to run, when facts come into existence that authorize a claimant to seek a judicial remedy."[8]

TIG contends that it did not suffer a legal injury and could not seek a judicial remedy against Aon Re until the arbitration decision rescinded the reinsurance treaty with regard to the Virginia Surety claims, which occurred on May 5, 2004. TIG contends in the alternative that its causes of action accrued in February 2003, when U.S. Life first asserted a right to rescind the treaty based on Aon Re's misrepresentations. Aon Re contends, and the district court found, that TIG's causes of action accrued in June 1998, when TIG and U.S. Life consummated the reinsurance treaty.

The Texas Supreme Court's decision in Murphy v. Campbell[9] is dispositive. In that case, an accounting firm gave faulty tax advice to its client. The Texas court held that "[a] person suffers legal injury from faulty professional advice when the advice is taken."[10] Although the court in that case applied the discovery rule, as we will discuss below, it concluded that a cause of action accrues, even when the discovery rule applies, as soon as the claimant knows or is put on notice that the advice is faulty, which may be well before a third party takes any adverse action against the plaintiff. The Texas court said, "a taxpayer may know his advice was faulty long before he receives a deficiency notice. For example, if a taxpayer sought other opinions upon receipt of an audit notice, or even earlier, the information obtained might put him on notice that the advice

---

[7] S.V. v. R.V., 933 S.W.2d 1, 4 (Tex. 1996).

[8] Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 514 (Tex. 1998).

[9] 964 S.W.2d 265 (Tex. 1997).

[10] Id. at 270.

he received was wrong."[11] In that case the cause of action accrued at the latest when the IRS sent a deficiency notice.[12] Accordingly, limitations could commence to run well before the IRS notified the taxpayer of its contention that additional tax was owed.

TIG acted on Aon Re's representations that complete data regarding Virginia Security had been provided to U.S. Life's agent when TIG accepted U.S. Life's proposal and entered into the reinsurance treaty. U.S. Life similarly relied on Aon Re's representations to it that the historical loss data was complete when in fact Aon Re omitted the Virginia Security data. A legal injury to TIG occurred on the date the treaty with U.S. Life became binding because that agreement was impaired from the outset by Aon Re's misrepresentations. U.S. Life had the right to rescind because of those misrepresentations. Additionally, TIG's liabilities for claims made under Virginia Surety policies were accruing from the date the treaty was consummated, but because of Aon Re's conduct, the treaty afforded TIG inadequate coverage for those claims, and they remained TIG's obligations.

TIG argues that if it had sued Aon Re before U.S. Life sought to rescind the reinsurance treaty, Aon Re would have contended there were no damages, and therefore, TIG would have had no meaningful judicial remedy. The Supreme Court of Texas expressly rejected a similar argument in Murphy v. Campbell.[13] One of the dissenters in that case had contended that "'[t]here is no need for an accountant to be subject to a malpractice claim if the Tax Court concludes that his client does not owe additional taxes and the accountant's

---

[11] Id. at 271.

[12] Id. at 272 (concluding that "the deficiency notice . . . marked the latest date on which their malpractice action could have accrued").

[13] Id. 273.

advice was sound.'"[14]   The court held otherwise, reasoning, "[w]hen alleged malpractice claims are not brought within a reasonable period after they are discovered or should have been discovered, accountants are severely prejudiced in mounting their defense:  witnesses often cannot be located or have forgotten critical facts and documents frequently are misplaced or destroyed."[15]  The court concluded that if accrual of a cause of action were deferred "for prolonged and indeterminate periods of time, the policy of repose underlying the statute of limitations is undermined."[16]  The proper course, the Texas court explained in Murphy v. Campbell, is to abate the claimant's negligence suit until any proceedings involving third parties are commenced and resolved.[17]  The court recognized that it may take a considerable period of time for a plaintiff to resolve issues with third parties.  But requiring a plaintiff to sue when its cause of action accrued will foreclose "'the specter of litigating decade-old-claims.'"[18]

The Texas court thus held that even in cases in which the discovery rule applies, as it did in Murphy v. Campbell, a cause of action accrues when the alleged wrong has caused a legal injury, "however slight[]."[19]  In the present case, TIG could have sued Aon Re at any time from June 1998 and simultaneously pursued a declaratory judgment or other action against U.S. Life

---

[14] Id. (quoting 964 S.W.2d at 276 (ABBOTT, J., dissenting)).

[15] Id.

[16] Id.

[17] Id. ("While it may be necessary to abate a malpractice suit pending resolution of a dispute with the taxing authority, we view that procedure as preferable to holding that limitations on a plaintiff's claim begins to run when plaintiff decides it should.").

[18] Id. (quoting a brief filed by an amicus curiae).

[19] Id. ("As in all discovery rule cases, a cause of action accrues when the plaintiff knows or reasonably should know that he has been legally injured by the alleged wrong, however slightly.").

to clarify or determine the validity or extent of coverage of the treaty. TIG was legally injured because of the impairment of the treaty.

The Texas Supreme Court's decision in Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.[20] is not inconsistent with Murphy v. Campbell.[21] The issue in that case was "whether, in a suit by an insured against its agent for negligent breach of the agent's duty to obtain insurance, the injury-producing event was the denial of coverage by the insurance company, or the final resolution of the coverage dispute by the courts."[22] The court held that the earlier date obtained. There was no contention in that case, however, that the plaintiff's suit against its agent accrued when the agent made misrepresentations to the plaintiff and the plaintiff entered into a contract in reliance on those misrepresentations.

The district court did not err in holding that TIG's causes of action for negligence, negligent misrepresentation, and breach of fiduciary duty accrued in June 1998.

IV

TIG contends that the discovery rule applies to its negligence, negligent misrepresentation, and breach of fiduciary claims. As a preliminary matter, Aon Re argues that TIG waived this issue by not pleading it. While Texas state procedure may require specific reference to the discovery rule in pleadings, "federal law governs the pleading requirements of a case in federal court."[23] The

---

[20] 962 S.W.2d 507 (Tex. 1998).

[21] 964 S.W.2d 265 (Tex. 1997).

[22] Johnson & Higgins of Texas, Inc., 962 S.W.2d at 514.

[23] Wellborn v. Sears, Roebuck & Co., 970 F.2d 1420, 1425 (5th Cir. 1992) (quoting Simpson v. James, 903 F.2d 372, 375 (5th Cir. 1990)) (quotations omitted).

discovery rule need not be specifically pleaded in federal court.[24] "[U]nder Rule 8 of the Federal Rules of Civil Procedure, it is enough that the plaintiff plead sufficient facts to put the defense on notice of the theories on which the complaint is based."[25] The facts pleaded by TIG gave sufficient notice to Aon Re that TIG might assert that the discovery rule applies.

Under Texas law, the discovery rule is an exception to the general rule that a cause of action accrues when a wrongful act causes some legal injury.[26] When applied, the discovery rule "defer[s] accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to a cause of action."[27] The determination of whether the discovery rule applies to a particular cause of action is a question of law.[28]

Prior to the Texas Supreme Court's decisions in Computer Associates International, Inc. v. Altai, Inc.[29] and S.V. v. R.V.,[30] the reasoning that supported the Texas courts' "decisions to apply the discovery rule in particular cases was 'diverse, somewhat inconsistent, and often overly broad.'"[31] The Texas Supreme Court "attempted to bring predictability and consistency to [its] jurisprudence

---

[24] Id.

[25] Id. (quoting Simpson, 903 F.2d at 375) (quotations omitted).

[26] S.V. v. R.V., 933 S.W.2d. 1, 8 (Tex. 1996) ("R.'s claims are therefore barred unless she is entitled to an exception to the legal injury rule."); Computer Assocs. Int'l, Inc. v. Altai, Inc., 918 S.W.2d 453, 455 (Tex. 1996).

[27] HECI Exploration Co. v. Neel, 982 S.W.2d 881, 886 (Tex. 1998) (citing Computer Assocs. Int'l, Inc. v. Altai, Inc., 918 S.W.2d 453, 455 (Tex.1996)).

[28] Moreno v. Sterling Drug, Inc., 787 S.W.2d 348, 351 (Tex. 1990).

[29] 918 S.W.2d 453 (Tex. 1996).

[30] 933 S.W.2d 1 (Tex. 1996).

[31] HECI, 982 S.W.2d at 886 (quoting S.V., 933 S.W.2d at 5-6).

in this area" in Altai and S.V.[32] The court "articulated two unifying principles that generally apply in discovery rule cases. They are that the nature of the injury must be inherently undiscoverable and that the injury itself must be objectively verifiable."[33]

Importantly, the Texas court explained that whether the discovery rule applies is determined categorically:

> [The Supreme Court of Texas] explained in Altai that the applicability of the discovery rule is determined categorically. Although the particular injury in Altai may not have been discovered, it was the type of injury that generally is discoverable by the exercise of reasonable diligence: "While some trade secret misappropriations might not be quickly discovered, this isolated fact does not alter the reality that, in most cases, trade secret misappropriation generally is capable of detection within the time allotted for bringing such suits."[34]

That is because "[s]tatutes of limitations are not directed to the merits of any individual case[;] they are a result of legislative assessment of the merits of cases in general."[35]

"An injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence."[36] The injury in this case, the consummation of an agreement between TIG and U.S. Life that was based on incomplete underwriting data, is not inherently undiscoverable because it is the type of injury that could have been discovered

---

[32] Id.

[33] Id. (citing Computer Assocs. Int'l, Inc. v. Altai, Inc., 918 S.W.2d 453, 456 (Tex.1996); S.V., 933 S.W.2d at 6).

[34] Id. (quoting Altai, 918 S.W.2d at 457).

[35] S.V., 933 S.W.2d at 6.

[36] Id. at 7.

by the exercise of reasonable diligence.[37] An entity in TIG's circumstances has numerous sources from which it could determine whether accurate information was sent to one with whom it was negotiating a contract. A starting point is the company's own files. Another source is the party with whom it is about to contract. Inquiry could be made to determine or confirm the facts and assumptions on which the bargain was to be based.

In the present case, there was summary judgment evidence that TIG's vice president in charge of its workers' compensation division sent an internal email before accepting U.S. Life's bid, stating, "I want to make sure the data AON sent to the market is good." A red flag had been raised because U.S. Life's bid was so low. The TIG vice-president claims that he instructed an employee in TIG's actuarial department to follow up on this concern, but Washburn testified that he did not recall that conversation. While fact questions exist as to exactly what follow-up occurred, the evidence exemplifies that TIG's injury is not, categorically, the type of injury that is inherently undiscoverable.

Nor was TIG relying on Aon Re for expertise that TIG did not possess. The discovery rule has been applied under Texas law to malpractice claims against accountants and attorneys because "the very reason to seek expert advice is that tax matters are often not within the average person's common knowledge."[38] Professional malpractice, such as erroneous tax advice, "is inherently

---

[37] See Armstrong v. Am. Home Shield Corp., 333 F.3d 566, 570 (5th Cir. 2003) ("We find that the profitability of a corporate division, and the source of information which underlies a cost quotation, are precisely the types of information that a seller involved in a substantial business transaction would seek to discover and could discover through the exercise of reasonable diligence."); Martinez Tapia v. Chase Manhattan Bank, N.A., 149 F.3d 404, 409 (5th Cir. 1998) ("The investor who seeks to blame his investment loss on fraud or misrepresentation must himself exercise due diligence to learn the nature of his investment and the associated risks.").

[38] Murphy, 964 S.W.2d at 271.

undiscoverable."[39]

TIG argues that, in a fiduciary context, the nature of the injury is presumed to be inherently undiscoverable. TIG cites Computer Associates International, Inc. v. Altai, Inc.[40] for this proposition. In Altai, the Texas Supreme Court observed in dicta:

> We stated [in Willis v. Maverick][41] that "[f]acts which might ordinarily require investigation likely may not excite suspicion where a fiduciary relationship is involved," and that absent the discovery rule exception the client "would have to hire a second attorney to observe the work of the first." But the fiduciary rationale is, in reality, a variation on the inherently undiscoverable element. Fiduciaries are presumed to possess superior knowledge, meaning the injured party, the client, is presumed to possess less information than the fiduciary. Consequently, in the fiduciary context, it may be said that the nature of the injury is presumed to be inherently undiscoverable, although a person owed a fiduciary duty has some responsibility to ascertain when an injury occurs.[42]

The Texas Supreme Court subsequently elaborated in S.V. v. R.V. that it had twice before held that a fiduciary's conduct was inherently undiscoverable, and "[t]he reason underlying both decisions is that a person to whom a fiduciary duty is owed is either unable to inquire into the fiduciary's actions or unaware of the need to do so."[43]

We assume, without deciding, that Aon Re owed a fiduciary duty to TIG to provide accurate information to U.S. Life and to accurately relay to TIG what it conveyed to U.S. Life. However, the undisputed evidence reflects that TIG

---

[39] Id.

[40] 918 S.W.2d at 456.

[41] 760 S.W.2d 642, 645 (Tex. 1988).

[42] Computer Assocs. Int'l, Inc. v. Altai, Inc., 918 S.W.2d 453, 456 (Tex.1996) (internal citation omitted).

[43] 933 S.W.2d 1, 8 (Tex. 1996).

was not relying upon Aon Re's expertise or superior knowledge to obtain reinsurance coverage. TIG used Aon Re as an intermediary to obtain bids from some reinsurers, TIG negotiated directly with reinsurers to obtain bids, then TIG would compare all the information it had received and use that information to negotiate the most favorable agreement, either directly or indirectly through Aon Re. TIG not only could but did audit information that Aon Re said it had distributed to the reinsurance market to determine whether that information was congruent with what TIG had given to Aon Re. The evidence reflects that TIG was not unaware of the need to inquire into what information Aon Re was distributing. This is highlighted by TIG's concerns when the U.S. Life bid was considerably lower than expected. Because TIG's injury was not inherently undiscoverable, the district court did not err in determining that the discovery rule is inapplicable to TIG's negligence, negligent misrepresentation, and breach of fiduciary claims.

V

TIG contends that the district court erred in determining that its common-law indemnity claim fails as a matter of law. TIG seeks to recover the uninsured liabilities attributable to the Virginia Surety segment of its business that it has incurred in the past and will incur in the future and to recover the costs and expenses it incurred arbitrating with U.S. Life. Both parties agree that Texas law applies to the indemnification claim.

Under Texas law, common-law indemnity is extremely rare and "[o]nly a vestige of common law indemnity remains."[44] "The only remaining vestiges of common law indemnity involve purely vicarious liability."[45] Texas law defines

---

[44] Bonniwell v. Beech Aircraft Corp., 663 S.W.2d 816, 817 (Tex. 1984), receded from on other grounds by Barr v. Resolution Trust Corp. ex rel Sunbelt Fed. Sav., 837 S.W.2d 627, 628-29 (Tex. 1992).

[45] Aviation Office of Am., Inc. v. Alexander & Alexander of Tex., Inc., 751 S.W.2d 179, 180 (Tex. 1988) (citing Bonniwell, 663 S.W.2d at 819-20). That decision's additional

indemnity as "the payment of all of plaintiff's damages by one tortfeasor to another tortfeasor who had paid it to the plaintiff."[46]

TIG contends that it faced "potential tort liability to US Life based upon its failure to disclose to US Life the [Virginia Surety] loss experience,"[47] and "faced vicarious liability for any damages to US Life caused by Aon's conduct." TIG candidly acknowledges, however, that "Aon's tort exposure to US Life (as well as TIG's vicarious liability) was extinguished by the arbitration proceeding in which US Life elected to forego its remedy of damages and pursue the equitable remedy of rescission." Because TIG was not vicariously liable for the tortious conduct of Aon Re, TIG is not entitled to indemnity.

The equitable remedy of rescission granted in the arbitration placed U.S. Life in the same position that obtained before it entered into the treaty with regard to Virginia Surety's obligations. U.S. Life did not suffer any loss and did not recover any damages. TIG merely repaid payments U.S. Life had made to reinsure claims attributable to Virginia Surety's business. This does not give rise to indemnity.

TIG argues that Prudential Insurance Co. v. BMC Industries, Inc.,[48] a case from the Southern District of New York, is the "single authority which squarely presents the circumstances of this case." In Prudential, the court noted:

> Although no authority is presented for the proposition that

---

observation that "the innocent product retailer situation" remained subject to common-law indemnity has been superseded by legislation providing statutory indemnity to an innocent product retailer, see TEX. CIV. PRAC. & REM. CODE § 82.002(a).

[46] Beech Aircraft Corp. v. Jinkins, 698 S.W.2d 722, 724 (Tex. App.—Houston [1st Dist.] 1985), aff'd, 739 S.W.2d 19 (Tex. 1987); see also Am. Indem. Co. v. Baumgart, 840 S.W.2d 634, 638 (Tex. App.—Corpus Christi 1992, no writ) ("Beech Aircraft Corp. v. Jinkins does not prevent a principal from paying a claim and then seeking indemnity against its agent.").

[47] (Emphasis added).

[48] 113 F.R.D. 100 (S.D.N.Y. 1986).

contribution or indemnity is available where the main claim is for rescission alone, common sense dictates that contribution and indemnification, usually discussed in the context of damages actions, are also available where the defendant claims damages based on a remedy of rescission assessed against it.[49]

It is our duty, however, to rule on this Texas state law issue as would the Texas courts.[50] "We will not expand state law beyond its presently existing boundaries."[51] Because no Texas court has applied common-law indemnity to a claim for damages sustained as a byproduct of rescission, and Texas courts have routinely confined the availability of indemnity to those who are vicariously liable for a tort and paid damages resulting from that tort, the district court did not err in this regard.

Similarly, TIG's claim for its arbitration costs are not damages that it was required to pay to U.S. Life as a result of vicarious liability. Common-law indemnification is not available as a means of recovering TIG's out-of-pocket arbitration costs under the circumstances of this case.

VI

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[49] Id. at 103 (internal citation omitted).

[50] See Erie R.R. v. Tompkins, 304 U.S. 64 (1938); Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 497 (1941) ("[T]he proper function of the [] federal court is to ascertain what the state law is, not what it ought to be."); Barfield v. Madison County, Miss., 212 F.3d 269, 272 (5th Cir. 2000). ("If the state's highest court has not spoken on the particular issue, 'it is the duty of the federal court to determine as best it can, what the highest court of the state would decide.'") (quoting Transcon. Gas v. Transp. Ins. Co., 953 F.2d 985, 988 (5th Cir. 1992)).

[51] Barfield, 212 F.3d at 272 (quoting Rubinstein v. Collins, 20 F.3d 160, 172 (5th Cir. 1994)).