470 So.2d 283 (1985)
Webster WILLIAMS, Jr. and Gloria Williams
v.
INGREDIENT TECHNOLOGY CORPORATION, formerly Colonial Molasses Company, Inc. and Donald Mire.
No. 85-CA-20.
Court of Appeal of Louisiana, Fifth Circuit.
May 13, 1985.
*284 John Paul Massicot, Frank A. Silvestri, New Orleans, for plaintiffs-appellants.
Philip O. Bergeron, Adams & Reese, New Orleans, for defendants-appellees.
Before KLIEBERT, BOWES and CURRAULT, JJ.
BOWES, Judge.
Plaintiff has appealed a summary judgment granted by the trial court in favor of defendant. We reverse and remand the case for trial.
Plaintiff Webster Williams was an employee of Colonial Molasses Company, Inc., now known as Ingredient Technology Corporation and referred to hereinafter as ITC. He was injured in the course and scope of his employment when steam from an exhaust pipe discharged, burning plaintiff in the head, neck and chest. A tort suit was filed against ITC and Donald Mire, a supervisory employee of ITC, under R.S. 23:1032, which excepts from Worker's Compensation immunity an intentional act of any employer, officer, stockholder, partner, or fellow employee.
In his petition, Williams alleged that the exhaust pipe in question had originally been located so as to discharge steam upward over the roof of the building owned by defendant ITC; however, defendant Mire ordered that the exhaust pipe be relocated and turned in such a position as would cause the steam exhaust to discharge into the driveway area. Plaintiff's immediate supervisor, Matthew Hood, warned Mire that to do so would present "an unreasonable risk of harm" to employees and passersby on the driveway. Despite these warnings, Mire ordered the relocation. Shortly thereafter, Williams was injured.
In depositions taken later, Matthew Hood stated that he was informed that the change was to be made because the pipe as it was then located was causing water to seep into a refrigeration box. Mire ordered the pipe redirected so that ultimately it would run horizontally two or three feet off the ground. Hood discussed the danger of this with Mire, explaining that the pipe could be redirected horizontally, but still at roof level. Hood was told this idea was unacceptable. It was finally decreed by Mire that the pipe should be located higher up, around eight feet off the ground. Hood explained that this was still dangerous, because an employee on a forklift is elevated to that height, and "would be in a direct line with it" (the exhaust). *285 Mire ordered the pipe to be installed at eight feet anyway.
The person operating the steam would not be able to see if anyone was in the vicinity. Ray Singleton, another employee, turned the valve on (on the day in question), which activated the steam. He was unable to see the outside area.
Hood also stated that he was pressured to sign an accident report which omitted certain facts relative to the accident. When discussing the preparation of the steam pump and its discharge, with the office manager, Hood was told "it wouldn't be in the best interest of the company to fully disclose everything." Mire later ordered him to sign the incomplete and, therefore, falsified report. Hood refused to do so. The particulars of the omitted facts were not fully disclosed.
In their motion for summary judgment, defendants offered, along with their memorandum, plaintiff's petition, the response to a request for admissions, and an affidavit which states that Mr. Williams was employed by the defendant at the time of his injury. The requested admissions disclosed that (1) Williams indeed admitted his employment status and (2) that Williams continued to aver that defendants' conduct was undertaken with the intent to injure him. Other than the above and its answer generally denying all allegations of the plaintiff's petition, defendant submitted no other attachments.
We take cognizance of the fact that plaintiff's petition does not use the sacrosanct words "the defendant desired the physical results," or "believed they were substantially certain to follow" or such synonymous terms. Were the present case before us on an exception of no cause of action, the defendant would be on more solid ground. However, in a motion for summary judgment, we are permitted to pierce the mere allegations in the pleadings and consider the depositions, affidavits, and admissions on file in order to determine if summary judgment is appropriate. Mayer v. Valentine Sugars, Inc., 444 So.2d 618 (La.1984).
Under the circumstances and facts presented here, we find that the defendants did not resolve the major issue of material fact here: Did Mire act with requisite intent so as to make defendants' liable in a tort action?
The rule of Bazley v. Tortorich, 397 So.2d 475 (La.1981), so frequently cited, is that intent under R.S. 23:1032, means that the defendant either desired to bring about the physical results of his act or believed they were substantially certain to follow from what he did.
Intent is not, however, limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result. Restatement (Second) of Torts, § 8A, Comment; Prosser, supra, § 8. Bazley, supra
Referring to one of the sources used by the Court in Bazley, W. Prosser, Law of Torts (4th ed. 1971), we find a similar explanation:
The man who fires a bullet into a dense crowd may fervently pray that he will hit no one, but since he must believe and know that he cannot avoid doing so, he intends it. The practical application of this principle has meant that where a reasonable man in the defendant's position would believe that a particular result was substantially certain to follow, he will be dealt with by the jury, or even by the court, as though he had intended it.
Applying this rationale to the present case, the immediate question which arises is: Would a reasonable man in Donald Mire's position believe that if he caused to be vented a pipe which discharged injuriously large amounts of steam into an area in which employees frequently drove forklifts, and that steam would be exhausted at the same level of elevation as those employees, and having the additional knowledge that the operator of such steam valves would not be able to see into the area of discharge to determine if a forklift *286 was in the vicinity, that it was substantially certain that an accident, such as that of Mr. Williams, would occur? Under these facts, we find it difficult to understand how Mire could not have been so certain.
The difference between "mere knowledge" and substantial certainty is crucial in these cases. For example:
... the mere knowledge and appreciation of a risk, short of substantial certainty, is not the equivalent of intent. The defendant who acts in the belief or consciousness that he is causing an appreciable risk of harm to another may be negligent, and if the risk is great his conduct may be characterized as reckless or wanton, but it is not classed as an intentional wrong. In such cases the distinction between intent and negligence obviously is a matter of degree. Apparently the line has been drawn by the courts at the point where the known danger ceases to be only a foreseeable risk which a reasonable man would avoid, and becomes a substantial certainty. [emphasis supplied] Prosser, supra.
If the distinction between knowledge and intent is a matter of degree, we find there are not enough facts before the court to permit the disposition of this case by summary judgment. What Mire did or did not know, including knowledge of the actual frequency of the employees in the forklifts in the area, and the frequency with which the steam pipe was vented, are some of the salient questions to be answered at a full trial to determine intent as explained hereinabove.
It should be observed that the record discloses certain allegations which, if correct, raise other curious questions relevant to the "intent" of Mr. Mire. Matthew Hood alleges that Mire attempted to pressure him into falsifying an accident report, and that he, Hood, refused to do so because certain "facts" were omitted. What "facts" these may be, and the actual omission of them in the report, may very well be factors which will determine Mire's knowledge, and, therefore, his intent. Indeed, the report itself could be of inestimable value in this determination. It is not presently a part of the record.
We are persuaded that the entire record before us discloses that there are unresolved issues of material fact regarding whether or not Mire must have believed and known that injury was substantially certain to result from his actions and instructions to Hood. These issues can only be determined at a full trial on the merits. Accordingly, the judgment of the trial court is reversed and the matter remanded for trial on the merits. Costs of this appeal are assessed to defendants.
REVERSED AND REMANDED.