Kathy McINTYRE and Joyce Bennett, Plaintiffs-Appellants,

v.

K–MART CORP., Defendant-Appellee.

No. 86–3126
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

July 21, 1986.

Layne Royer, Baton Rouge, La., for plaintiffs-appellants.

**1024**

Walter W. Christy, Keith D. Frazier, New Orleans, La., for defendant-appellee.

■■■■■■■■■■■■

Before CLARK, Chief Judge, WILLIAMS, and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

I

The plaintiffs are two individuals who injured their backs while moving heavy objects in the course of their employment at one of the defendant's stores. In an effort to escape the exclusive-remedy provisions of Louisiana's workman's compensation statute, the plaintiffs filed suit in state court alleging that their injuries were caused by an "intentional act" of the defendant. After the case was removed to federal court on grounds of diverse citizenship and after discovery had proceeded for several months, the district court granted summary judgment in favor of the defendant.

■■ Louisiana R.S. 23:1032, which provides that workman's compensation is generally the exclusive remedy for job related injuries, provides an exception where the injury is the result of an "intentional act" by the employer. In applying this exception, Louisiana courts use standard tort principles to distinguish intentional from unintentional acts. Under the applicable test, a plaintiff need not show that the defendant desired to injure him, but may demonstrate that the defendant believed or knew that the harm to the plaintiff was substantially certain to result from something that the defendant did. *Bazley v. Tortorich*, 397 So.2d 475, 482 (La.1981). In this and many other Louisiana cases, the "intentional act" exception in R.S. 23:1032 has been narrowly construed. *See, e.g.,*

*Fallo v. Tuboscope Inspection*, 444 So.2d 621 (La.1984); *Weinnig v. Brown & Root, Inc.*, 434 So.2d 1099 (La.1983), *summarily rev'g* 428 So.2d 1199 (La.Ct.App.1983); *Gallant v. Transcontinental Drilling Co.*, 471 So.2d 858 (La.Ct.App.1985); *MacDonald v. Reeves Transportation Co.*, 448 So.2d 217 (La.Ct.App.1984); *Maddie v. Plastic Supply & Fabrication, Inc.*, 434 So.2d 158 (La.Ct.App.), *writ denied*, 435 So.2d 445 (La.1983); *see also Simoneaux v. E. I. Dupont de Nemours & Co.*, 483 So.2d 908 (La.1986).

The plaintiffs alleged that the defendant intentionally hired an inadequate number of competent employees and that the defendant must have known that this would lead to injuries of the kind that occurred. The plaintiffs offered to prove the defendant's knowledge by showing that K-Mart had records of several other muscle sprains and strains suffered by its employees. Ignoring a large number of cases in which the "intentional act" exception has been narrowly construed, the plaintiffs point to *Williams v. Ingredient Technology Corp.*, 470 So.2d 283, 285 (La.Ct.App.1985), where the court quoted from Prosser's hornbook on torts as follows: "The man who fires a bullet into a dense crowd may fervently pray that he will hit no one, but since he must believe and know that he cannot avoid doing so, he intends it. . . ." Ripping this quotation out of its context in the court's opinion,[1] the plaintiffs argue that K-Mart intentionally failed to institute an accident prevention program that would prevent muscle strains and sprains and is therefore liable under the intentional tort rubic:

> It is hard to believe that any major employer would not document what caused their employees' injury [sic] and what preventative measures or precautions could be taken to eliminate or reduce that type of injury in the future. Undersigned counsel maintains that such action

---

**1.** The court went on to quote extensively from Prosser. Among the sentences quoted was this: "The defendant who acts in the belief or consciousness that he is causing an appreciable risk of harm to another may be negligent, and if the risk is great his conduct may be characterized as reckless or wanton, but it is not classed as an intentional wrong." 470 So.2d at 286.

or conduct manifests an intentional policy by K-Mart Corporation which is certain to cause injury in the future to other employees. While K-Mart Corporation doesn't know the exact person who will be injured due to this intentional action or conduct of K-Mart Corporation in failing or refusing to implement an accident prevention program, it knows that a certain percentage of its employees will be injured due to this intentional policy. Undersigned counsel maintains that this is analagous [sic] to an individual who intentionally fires a weapon into a crowd of people.

On this reasoning, any employer engaged in a business in which workers are frequently, or perhaps even occasionally, injured would be deemed by law to have intended those injuries. Thus, an employer could be held liable for an intentional tort on the basis of conduct that does not even rise to the level of ordinary negligence. The Louisiana cases in general, and *Williams v. Ingredient Technology Corp.*, in particular, do not show the slightest inclination to turn the exclusive-remedy provisions of the workman's compensation statute completely upside down in the manner that these plaintiffs propose.

## II

■ The plaintiffs next complain that the district court applied its local rule under which parties are limited to serving twenty-five interrogatories on an opposing party unless good cause for a greater number is established.[2] The plaintiffs contend that because they filed more than twenty-five interrogatories in state court before the case was removed, they are entitled to have all those interrogatories answered as a matter of right. The plaintiffs rely entirely on the following language, torn from its context in *Butner v. Neustadter*, 324 F.2d 783, 785 (9th Cir.1963):

> The federal rules apply after removal and "neither add to nor abrogate what has been done in the state court prior to

removal." *Talley v. American Bakeries Co.*, 15 F.R.D. 391, 392 (E.D.Tenn.1954). The federal court takes the case as it finds it on removal and treats everything that occurred in the state court as if it had taken place in federal court.

Although the plaintiffs do not seem to have noticed, the *Butner* court drew the operative language in this quotation from *Savell v. Southern Railway Co.*, 93 F.2d 377, 379 (5th Cir.1937), which held that a state court ruling on a demurrer could be reconsidered by a federal court after removal. *Butner*, like the more obviously authoritative case of *Azzopardi v. Ocean Drilling & Exploration Co.*, 742 F.2d 890, 895 (5th Cir.1984), held that a state court default judgment entered prior to removal could be set aside under Fed.R.Civ.P. 60(b). None of these cases undermines the well-settled rule that "[o]nce a state court action is removed, it is governed by federal, rather than state, procedure." *Azzopardi*, 742 F.2d at 895 (citations omitted). The plaintiffs' effort to escape application of the district court's procedural rules appears to be wholly without support in the case law.

## III

■ Contending that this appeal was frivolous, the appellee urges us to make an award of damages and double costs under Fed.R.App.P. 38. Although the appellants' positions appear to have no support at all in the law, the appellees did not cite, and we did not discover, any cases that directly and unambiguously disposed of appellants' arguments. Although Rule 38's concept of a "frivolous" appeal provides a somewhat vague standard whose inapplicability to this case is by no means obvious, we conclude that the appellants' position was just barely colorable enough to escape Rule 38 sanctions.

In saying this, we warn that our patience is sorely taxed by such meritless appeals. More is at stake than the inconvenience of judges and opposing parties. While we

---

**2.** The decision to limit the plaintiffs to twenty-five interrogatories was initially made by a United States Magistrate after a hearing. The plaintiffs moved the district court to overrule the magistrate's decision; the court denied this motion.

accept that lawyers must be free to question even settled principles, a freedom that is necessary in our adversary system, we are also sensitive to the reality that judicial resources are finite and that one case must always in some measure displace another. There is thus a judicial duty to respond to the prosecution of claims that are beyond the pale of fair advocacy. That response may well take the form of sanctions against lawyers who fail in *their* responsibility to refrain from loading the system with frivolity. If appeals like this one continue to be taken, sanctions will inevitably become more common than they are now.

AFFIRMED.