# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 17, 2009

Charles R. Fulbruge III
Clerk

No. 08-50664

USPPS, LTD

Plaintiff - Appellant

v.

AVERY DENNISON CORPORATION; RENNER, OTTO, BOISELLE &
SKLAR, LLP; NEIL DUCHEZ, Individually

Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas, San Antonio Division

Before KING, STEWART, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Plaintiff–Appellant USPPS, Ltd. alleges that defendants–appellees Avery
Dennison Corporation; law firm Renner, Otto, Boiselle & Sklar, L.L.P.; and one
of its partners, Neil DuChez, failed to prosecute effectively USPPS, Ltd.'s patent
applications regarding personalized postage stamps before the United States
Patent and Trademark Office. USPPS, Ltd. brought claims under Texas law for
fraud and breach of fiduciary duty in the United States District Court for the
Western District of Texas based on diversity of citizenship. The court granted

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

the defendants' motions to dismiss on the ground that the claims were barred by the four-year statute of limitations. It reasoned that USPPS, Ltd. knew or should have known of any wrongful injury by May 14 or 15, 2003, when it was informed that the patent applications had been abandoned. For the following reasons, we reverse the judgment of the district court and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

When reviewing a court's grant of a motion to dismiss, we accept all well-pleaded facts as true. *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 379 (5th Cir. 2003). The facts which we describe below are drawn from plaintiff's First Amended Complaint. Joe Pat Beasley is the sole manager, sole member, and chief executive officer of USPPS Management, L.L.C. ("USPPS Management"). USPPS Management is the sole general partner of USPPS, Ltd. ("USPPS"), which is a Texas limited partnership with its principal place of business in San Antonio, Texas. Terry Kerr is the President of USPPS Management and USPPS. In 1999, Beasley filed his First Patent Application with the United States Patent and Trademark Office (the "PTO") for his invention of personalized postage stamps and designated a law firm to act on his behalf.

In late 2000 and early 2001, while the First Patent Application was pending, Beasley began negotiating a licensing and manufacturing subcontract with Avery Dennison Corporation ("Avery Dennison"). Avery Dennison is incorporated in Delaware with its principal place of business in California. As part of the licensing agreement negotiations, Beasley interacted many times with Al Green, Vice President of Avery Dennison. During this time, Green informed Beasley:

(1) that Avery Dennison had patent experts; (2) that Avery Dennison was the best in the industry at procuring patents; (3) that Avery Dennison had hundreds of patents; (4) that Avery Dennison wanted to take over the management of Beasley's intellectual property; (5) that Avery Dennison had used the patent law firm of Renner, Otto on many patents; (6) that Renner, Otto was the best; (7) that Beasley needed the best patent lawyers; (8) that Avery Dennison wanted to improve and broaden the patent; (9) that Beasley needed to get rid of [its current] [l]aw [f]irm and go with Renner, Otto; and (10) that Avery Dennison would get Beasley a power of attorney which would enable Renner, Otto to take over the patent process and transfer the matter . . . to Renner, Otto.

(Pl.'s First Am. Compl. 3–4.)  Renner, Otto, Boiselle & Sklar, L.L.P. ("Renner Otto") is a law firm and limited liability partnership organized under Ohio law with its principal place of business in Ohio.  Neil DuChez is a partner at Renner Otto.

In March 2001, Beasley was notified that the First Patent Application had been approved and that he would receive the patent once he had paid processing fees.  In May 2001, Avery Dennison agreed that it would assume responsibility for prosecuting Beasley's patent application and pay all patent prosecution expenses for the First Patent Application or any subsequent related applications or proceedings before the PTO.  Beasley signed a Revocation and Power of Attorney that revoked all previous powers of attorney and appointed certain Renner Otto attorneys to prosecute the patent application.  DuChez reassured Beasley multiple times that he represented Beasley and never informed Beasley or Kerr that neither Beasley nor USPPS was Renner Otto's client.  In June 2001, Renner Otto submitted the Power of Attorney; a Continued Prosecution Application, which expressly abandoned the First Patent Application; and a Second Patent Application to pursue additional claims.  At this time, Renner Otto did not pay the necessary processing fees for the First Patent Application.  In August 2001, USPPS and Avery Dennison entered into a Supply Agreement,

whereby Avery Dennison would pay USPPS a 5% royalty on sales of personalized stamps.

In April 2002, DuChez informed Kerr that the patent examiner had withdrawn "the patent application" from issue. The following month, Renner Otto informed Avery Dennison that the First Patent Application had been rejected. In June, Renner Otto informed Avery Dennison that the PTO had rejected the Second Patent Application. Renner Otto filed responses, but the PTO ultimately rejected both applications in November 2002. The following month, Avery Dennison informed Kerr that it was unable to come up with any further claim language that would overcome the PTO's objections and that it had no hope for the applications going further.

On or about May 14, 2003, DuChez informed Avery Dennison, Beasley, and Kerr that the patent applications had been abandoned. Avery Dennison and USPPS continued to do business under the terms of the Supply Agreement. On March 17, 2004, Avery Dennison informed USPPS via e-mail that the Supply Agreement would be terminated on August 2, 2004; that Avery Dennison intended to begin selling personalized postage stamps to third parties; and that it would only pay royalties until that date. On August 13, 2004, Avery Dennison sent a termination letter confirming these intentions.

On April 30, 2004, Beasley and Kerr conferred with another attorney, who reviewed the Supply Agreement. The attorney believed that there was a potential conflict of interest in Renner Otto and DuChez (who represent Avery Dennison) representing Beasley and USPPS in the patent prosecution process. The alleged conflict of interest was rooted in Avery Dennison's benefitting from a rejection of the patent applications because it would not have to pay future royalties on personalized postage stamps. None of the other parties had alerted Beasley, Kerr, or USPPS about this conflict.

4

## B. Procedural Background

### 1. The *Beasley* litigation

This litigation was preceded by an initial lawsuit filed by Beasley in the United States District Court for the Western District of Texas, alleging breach of fiduciary duty and negligence. *Beasley v. Avery Dennison Corp.*, No. 04-CA-866, 2007 WL 1558621 (W.D. Tex. May 25, 2007). According to the First Amended Complaint filed in this litigation, over the course of discovery in the initial lawsuit, USPPS learned that:

> (1) Both Avery Dennison and Neil DuChez had been researching his patent application for almost six (6) months before Beasley signed his Power of Attorney to Renner[] Otto and that i[t] was DuChez's general impression that it would be difficult for Beasley to obtain a patent and if obtained would be relatively weak;
>
> (2) Avery Dennison considered his proposed License Agreement laughable and absurd;
>
> (3) Avery Dennison only planned on using limited funds to prosecute his patent and they were going to hide these costs;
>
> (4) Avery Dennison was leveraging this patent pending process and if the patent protection was meaningless they either would not renew the Supply Agreement or not with a royalty clause;
>
> (5) Avery Dennison was restricting Beasley's access to Neil DuChez and he could do nothing for Beasley without Avery's approval; and
>
> (6) Avery Dennison, Renner[] Otto and DuChez did basically nothing to respond to the second set of rejections from the PTO.

(Pl.'s First Am. Compl. 7–8.)

During discovery in the initial lawsuit, Avery Dennison and Renner Otto found a document entitled Intellectual Property Assignment (the "Assignment") that was dated July 3, 2001. According to the document, Beasley transferred all of his intellectual property rights to USPPS. Beasley claimed that he did not recall assigning the rights to USPPS and that he only intended to assign the rights to USPPS after the patent had been issued. The district court concluded

5

that Beasley lacked standing and that USPPS's Motion to Intervene was tardy. The court thus dismissed the initial lawsuit with prejudice as to Beasley and without prejudice as to USPPS. It also sanctioned Beasley $200,000 for concealing the Assignment from Avery Dennison and Renner Otto.

### 2. The current litigation

On November 27, 2007, USPPS filed this suit against Avery Dennison, Renner Otto, and DuChez (collectively, "the defendants"), alleging breach of fiduciary duty and fraud. The district court ruled only on the threshold question concerning the statute of limitations for USPPS's causes of action. In addressing defendants' two motions to dismiss, one filed by Avery Dennison and the other filed by both Avery Dennison and Renner Otto, the court held:

> USPPS knew or should have known at the earliest on January 20, 2003, and the latest on May 14–15, 2003, Avery, Renner and Mr. DuChez would not further prosecute the patent applications, would not advise USPPS regarding its right to further negotiate with the PTO, and would not help USPPS to overcome the PTO's rejections. Additionally . . . USPPS knew or should have known on January 23, 2003, it had to retain its own patent counsel to further prosecute the applications. In other words, USPPS knew or should have known of the very facts it alleges caused harm well before November 27, 2003.

*USPPS, Ltd. v. Avery Dennison Corp.*, No. 07-CA-963, slip op. at 18 (W.D. Tex. May 30, 2008). The court granted both motions, dismissing USPPS's First Amended Complaint with prejudice as barred by limitations. The court never addressed the applicability of the two-year statute of limitations for legal malpractice.

## II. STANDARD OF REVIEW

This court reviews de novo a district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 140 (5th Cir. 2007). "Dismissal under Rule 12(b)(6) is appropriate when the plaintiff has failed to allege 'enough facts to state a claim

6

to relief that is plausible on its face' and fails to 'raise a right to relief above the speculative level.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1965, 1974 (2007)). We accept all well-pleaded facts as true for the purposes of the motion to dismiss. *United States ex rel. Willard*, 336 F.3d at 379. "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling . . . ." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003). "[T]he question of when a cause of action accrues is a matter of law for the court to decide." *See TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 355 (5th Cir. 2008); *see also id.* at 357 ("The determination of whether the discovery rule applies to a particular cause of action is a question of law.").

### III. DISCUSSION

A person must bring suit for a cause of action for fraud or breach of fiduciary duty "not later than four years after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE ANN. § 16.004 (Vernon 2002).[1] According to the Texas Supreme Court, "a cause of action accrues when a wrongful act causes some legal injury." *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996); *see also Trinity River Auth. v. URS Consultants, Inc.–Texas*, 889 S.W.2d 259, 262 (Tex. 1994); *Quinn v. Press*, 140 S.W.2d 438, 440 (Tex. 1940). This is the case "even if the fact of injury is not discovered until later" and "if all resulting damages have not yet occurred." *S.V.*, 933 S.W.3d at 4; *see also XCO Prod. Co. v. Jamison*, 194 S.W.3d 622, 634 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) ("Stated another way, a cause of action can generally be said to accrue when the wrongful act effects an injury, regardless of when the plaintiff learned

---

[1] In the present case, we preliminarily agree with the district court that the four-year statute of limitations applies to USPPS's claims for fraud and breach of fiduciary duty. The question is thus whether the date of accrual was no later than May 14–15, 2003, or whether an exception applies and the limitations period began running on April 30, 2004—the day that USPPS learned of defendants' potential conflict of interest.

of such injury."). For the purposes of the present appeal, there are two related exceptions to the legal injury rule: (1) the discovery rule, and (2) fraudulent concealment. *See S.V.*, 933 S.W.3d at 4. USPPS argues that both postpone the date on which its causes of action accrued because it was not aware of the wrongful acts—the defendants' conflict of interest and consequent failure to prosecute effectively its patent applications—until April 2004. While we recognize that these exceptions are distinct,[2] USPPS's argument applies equally to both exceptions. Thus, after briefly setting forth each standard, we then turn to address USPPS's overarching contention.

The discovery rule is a "'very limited exception' to statutes of limitations." *Colonial Penn Ins. v. Mkt. Planners Ins. Agency Inc.*, 157 F.3d 1032, 1034 (5th Cir. 1998) (quoting *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996)). Under the discovery rule, "an action does not accrue until the plaintiff knew or in the exercise of reasonable diligence should have known of the wrongful act and resulting injury." *S.V.*, 933 S.W.2d at 4; *see also Colonial Penn*, 157 F.3d at 1034 ("The rule postpones the running of the statutory limitation period until such time as the claimant discovers, or in exercising reasonable diligence should have discovered, facts that indicate he has been injured."). The discovery rule does not apply—and hence the date of accrual is not postponed—simply because a claimant does not know "the specific cause of the injury," "the party responsible for it," "the full extent of it," or "the chances of avoiding it." *PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd.*, 146 S.W.3d 79, 93–94 (Tex. 2004). This court has also noted that the Texas discovery

---

[2] Texas courts have occasionally employed the discovery rule "to refer generally to all instances in which accrual is deferred, including fraud and fraudulent concealment." *S.V.*, 933 S.W.2d at 4; *see also, e.g.*, *Williams v. Khalaf*, 802 S.W.2d 651, 657 (Tex. 1990) (referring to a case that "involved the 'discovery rule'" because there was a "claim of fraudulent concealment"). However, they more often distinguish the two exceptions and recognize that they are "characterized by different substantive and procedural rules." *S.V.*, 933 S.W.2d at 4.

8

rule does not operate to toll the statutory limitations clock "until the plaintiff learns that the defendant's conduct may have been wrongful." *Timberlake v. A.H. Robins Co.*, 727 F.2d 1363, 1365 (5th Cir. 1984).

This exception applies to cases where the injury incurred is "inherently undiscoverable" and the evidence of such injury is "objectively verifiable." *S.V.*, 933 S.W.2d at 6. The Texas Supreme Court has described an injury as "inherently undiscoverable" when "it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence." *Id.* at 7. However, "discovery of a particular injury is dependent not solely on the nature of the injury but on the circumstances in which it occurred and plaintiff's diligence as well." *Id.* A fiduciary's conduct is inherently undiscoverable when the "person to whom a fiduciary duty is owed is either unable to inquire into the fiduciary's actions or unaware of the need to do so." *Id.* at 8; *see also Willis v. Maverick*, 760 S.W.2d 642, 647 (Tex. 1988); *Slay v. Burnett Trust*, 187 S.W.2d 377, 394 (Tex. 1945). However, "[w]hile a person to whom a fiduciary duty is owed is relieved of the responsibility of diligent inquiry into the fiduciary's conduct, so long as that relationship exists, when the fact of misconduct becomes apparent it can no longer be ignored, regardless of the nature of the relationship." *S.V.*, 933 S.W.2d at 8. Finally, showing that the injury is "objectively verifiable" often requires "direct, physical evidence," *id.* at 7, though expert testimony may be necessary "when the primary issue relevant to liability concerns correctness of past judgment," *Robinson v. Weaver*, 550 S.W.2d 18, 21 (Tex. 1977).

Under the fraudulent concealment exception to the legal injury rule, "accrual is deferred because a person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run." *S.V.*, 933 S.W.2d at 6. In such cases, the limitations period is tolled "until such time as the plaintiff learned of, or should have discovered, the deceitful conduct or the

9

facts giving rise to the cause of action." *Earle v. Ratliff*, 998 S.W.2d 882, 888 (Tex. 1999); *see also Nichols v. Smith*, 507 S.W.2d 518, 519 (Tex. 1974) (noting that, in an instance of fraudulent concealment, "the guilty party will be estopped from relying on the defense of limitations until the right of action is, or in the exercise of reasonable diligence should be, discovered"). "Notably, this is the same standard that applies to the discovery rule." *Trousdale v. Henry*, 261 S.W.3d 221, 235 (Tex.App.—Houston [14 Dist.] June 24, 2008, pet. filed).

Texas courts have focused on the discovery rule in the fiduciary context on multiple occasions, emphasizing the wrongful injury requirement and recognizing situations where the "person to whom a fiduciary duty is owed is either unable to inquire into the fiduciary's actions or unaware of the need to do so."[3] *S.V.*, 933 S.W.2d at 8; *see also, e.g.*, *Willis v. Maverick*, 760 S.W.2d 642 (Tex. 1988); *Slay v. Burnett Trust*, 187 S.W.2d 377 (Tex. 1945); *Franklin Cty. v. Tittle*, 189 S.W.2d 773, 775 (Tex. App.—Texarkana 1945, pet. denied) ("Where a relationship of trust and confidence exists between the parties, the rule is that limitation starts to run only from the time of actual discovery of the fraud."); 50 TEX. JUR. § 80 (3d ed. 2008) (same). In *Slay*, for example, the Texas Supreme Court applied the discovery rule when certain trustees of a trust sued co-trustees and others that had allegedly earned "secret profits" through various

___

[3] Since the parties—including all three defendants—invoke the laws relevant to fiduciary relationships, we assume without deciding that the defendants owed a fiduciary duty to USPPS. *See TIG Insurance Co.*, 521 F.3d at 359 (assuming without deciding that a fiduciary relationship existed between an insurance company and its broker for the purposes of determining whether the Texas discovery rule applied). Furthermore, though certain illustrative cases do not explicitly concern fiduciary relationships, they nonetheless deal with the issue of whether an injury was inherently undiscoverable and thereby defer the date of accrual. This court has already recognized that "the fiduciary rationale is, in reality, a variation on the inherently undiscoverable element." *TIG Ins. Co.*, 521 F.3d at 359. In other words, "[f]iduciaries are presumed to possess superior knowledge" and the injured party "is presumed to possess less information than the fiduciary," thus meaning that "the nature of the injury is presumed to be inherently undiscoverable, although a person owed a fiduciary duty has some responsibility to ascertain when an injury occurs." *Id.*

transactions related to the trust. 187 S.W.2d at 625–26. The court stated that "the evidence fail[ed] to show facts sufficient to put the beneficiary, or even the co-trustees, on inquiry." *Id*. at 652. According to the court, the plaintiffs were aware that defendants "examine[d] titles in connection with loans made by the trust," "collect[ed] attorneys' fees from the borrowers," and received two checks from the trust, one for $472.69 and another for $135, with notations indicating that the defendants would use them for certain expenses. *Id*. The court ruled: "We do not believe that knowledge of facts of this nature could reasonably have caused officers of the beneficiary, or the co-trustees, to suspect that the defendants had engaged or were engaging in the distinctly different conduct on account of which this suit was brought." *Id*. Similarly, in *Willis*, the Texas Supreme Court concluded that the discovery rule applied to the fiduciary relationship between an attorney and client. 760 S.W.2d at 645. Yvonne Willis, a divorcee, sued her attorney for legal malpractice because he had assured her that she would have the right to reside in her house until her child turned eighteen but, in fact, the lack of any specific language in the divorce agreement allowed Willis's ex-husband to attempt to force partition of the home. *Id*. at 643–44. The question thus became "when [Willis] discovered, or should have discovered, in the exercise of reasonable care and diligence, the facts establishing the elements of the cause of action." *Id*. at 647. The court ultimately denied Willis recovery "only" because she failed to preserve error below. *Id*.

The Texas Supreme Court has also ruled that the date of accrual was not deferred when a plaintiff knew or should have known of its wrongful injury. *See, e.g.*, *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 737 (Tex. 2001) (ruling that plaintiffs' injury was "the type that could have been discovered with reasonable diligence" and that "therefore the discovery rule does not apply to defer accrual of their claims."); *HECI Exploration Co. v. Neel*, 982 S.W.2d 881,

11

886 (Tex. 1998) ("As owners of an interest in the mineral estate, the Neels had some obligation to exercise reasonable diligence in protecting their interests. This includes exercising reasonable diligence in determining whether adjoining operators have inflicted damage."). For example, in *KPMG Peat Marwick v. Harrison County Housing Finance Corp.*, Harrison County Finance Corporation ("HCH") sued KPMG Peat Marwick, L.L.P. ("Peat Marwick"), which was providing accounting and auditing services to HCH. 988 S.W.2d 746, 747 (Tex. 1999). HCH had hired Peat Marwick to ensure that First Interstate Bank of California ("First Interstate") was complying with a trust indenture that specified its duties as trustee of a capital reserve fund related to bonds that HCH had issued. *Id.* Unbeknownst to HCH, however, First Interstate also hired Peat Marwick to prepare a special procedures report regarding the trust assets, thereby creating a conflict of interest for Peat Marwick. *Id.* In 1989, First Interstate prematurely sold some assets in the capital reserve fund, resulting in a loss of over $621,000 when the bonds were refunded in 1991. *Id.* Four years after incurring that loss, HCH learned that: (1) Peat Marwick was also working for First Interstate; (2) Peat Marwick had only reported irregularities in First Interstate's accounting of the trust assets to First Interstate; and (3) Peat Marwick had only advised First Interstate on how its capital reserve fund could be set at a lower amount than that required by the trust indenture. *Id.* at 748. The Texas Supreme Court reversed the court of appeals, ruling that, by the time HCH had suffered the loss of $621,000, it was "[i]ndisputably . . . aware . . . of its injury and that its injury was caused by the wrongful conduct of another." *Id.* at 749. The court further reasoned that "[t]he loss from the premature sale of the fund assets should have caused HCH to investigate not only the possibility that First Interstate had mismanaged the fund assets, as HCH apparently did because it sued First Interstate, but also Peat Marwick's possible involvement in the mismanagement and loss." *Id.* The court also ruled that fraudulent

12

concealment did not toll the period of limitations. *Id.* at 750. It stated: "[a]s with the discovery rule, once HCH knew that it had been injured by fund mismanagement, it should have investigated why its auditor, Peat Marwick, had failed to discover or report the mismanagement to HCH." *Id.*

In the present case, USPPS has asserted both claims of breach of fiduciary duty and fraud against all three defendants and argues that the four-year statute of limitations does not bar its claims because the discovery rule and fraudulent concealment exceptions apply. Based on the facts as alleged in USPPS's complaint, we agree. It is true that USPPS had already submitted a patent application that it believed was to be approved and already knew about the applications' abandonment in May 2003. It is also true that the Texas Supreme Court has not applied the discovery rule where injured parties could have exercised reasonable diligence based on information or records available at the time. *See, e.g., Wagner*, 58 S.W.3d at 736–37. However, many of these cases arose in a summary judgment context, where the Supreme Court's standard was "whether the successful movant at the trial level carried its burden of showing that there is no genuine issue of material fact and that judgment should be granted as a matter of law." *KPMG Peat Marwick*, 988 S.W.2d at 748. In this case, by contrast, we review USPPS's First Amended Complaint and "accept all well-plead[ed] factual allegations as true." *United States ex rel. Willard*, 336 F.3d at 379. In so doing, we find that USPPS has "allege[d] 'enough facts to state a claim to relief that is plausible on its face.'" *Nationwide Bi-Weekly Admin., Inc.*, 512 F.3d at 140 (quoting *Twombly*, 127 S.Ct. at 1965, 1974).

Accepting all well-pleaded facts as true, while we can say that USPPS knew in May 2003 that it had suffered a loss, we cannot now say that USPPS knew or should have known in May 2003 that it had been wrongfully injured. Indeed, USPPS continued to do business with the defendants until it was told that the agreement would be discontinued. Only in April 2004, when it learned

13

of the alleged conflict of interest and the consequent harm that it may have suffered, did USPPS become aware of a "wrongfully caused injury." Thus, it is too difficult at the dismissal stage to say that the fact of misconduct should have been known so early as to bar the action here. Drawing from *Slay*, we hold that USPPS's knowledge as described in the complaint—that the two patent applications were rejected by the PTO and that the defendants would no longer be pursuing them—could not have reasonably caused USPPS to suspect that failure of the patent applications was the result of wrongful conduct on the part of the defendants rising to the level of breach of fiduciary duty and fraud. Indeed, the Texas Supreme Court has already noted that "it is unrealistic to expect a layman client to have sufficient legal acumen to perceive an injury at the time of the negligent act or omission of his attorney." *Willis*, 760 S.W.2d at 645 (internal alteration and quotation marks omitted). Similarly, at this stage it is unrealistic to expect USPPS to have had sufficient patent acumen—where none has been described in the complaint—to perceive a wrongful injury at the time of the PTO's rejection of the patent applications. Finally, this case is distinguishable from *KPMG Peat Marwick*. In that case, the vast loss that HCH suffered—$621,000—was a clear injury that should have alerted it to inquire about mismanagement. In the present case, by contrast, the loss of the patent applications before the PTO is more analogous to the loss in *Slay*, one that would not have alerted the plaintiff of its wrongful injury.

Thus, accepting all well-pleaded facts in the First Amended Complaint as true, we cannot definitively say that the discovery rule and fraudulent concealment exceptions do not postpone the date of accrual until April 2004, when USPPS learned of the potential connection between the failed patent applications and defendants' alleged conflict of interest. Further discovery may reveal facts suggesting that the exceptions should not apply, but we express no opinion regarding the proper outcome at that stage of the litigation.

14

## IV. CONCLUSION

For the foregoing reasons, we REVERSE the judgment of the district court and REMAND for further proceedings consistent with this opinion.