# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-10084

United States Court of Appeals
Fifth Circuit

**FILED**

December 29, 2014

Lyle W. Cayce
Clerk

JOHN THOMPSON; IVY THOMPSON,

Plaintiffs - Appellants

v.

DEUTSCHE BANK NATIONAL TRUST COMPANY,

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before JOLLY and COSTA, Circuit Judges, and ROSENTHAL*, District Judge.

E. GRADY JOLLY, Circuit Judge:

John and Ivy Thompson appeal the district court's judgment in favor of Deutsche Bank National Trust Company. The Thompsons brought this action in Texas state court under Section 50 of Article XVI of the Texas Constitution ("Section 50"), challenging the adequacy of a loan that they obtained in 2006. Although Deutsche was never properly served, the state court nonetheless granted the Thompsons a default judgment against Deutsche. Upon learning of the lawsuit, Deutsche removed the case, moved to set aside the state court

---

* District Judge of the Southern District of Texas, sitting by designation.

No. 14-10084

default judgment, and subsequently moved for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Thompsons moved for remand to state court, arguing that Deutsche's potential relief from the state court judgment lies in state court, not federal court. The district court sided with Deutsche and ultimately dismissed the Thompsons' claims as barred by the statute of limitations.

To resolve this appeal, we must first determine whether the district court correctly vacated the state court judgment upon concluding that removal to federal court was proper and, relatedly, that the state court judgment was void. If we agree with the district court, we must then assess whether the district court correctly dismissed the complaint because the statute of limitations had run. Based on our review of the record and our consideration of the arguments of the parties, we AFFIRM the district court in all respects.

I.

The Thompsons purchased a piece of real property in August 1996, and they executed a promissory note and deed of trust in favor of Option One Mortgage Company. In 2002, they executed a renewal and extension agreement and executed a promissory note and deed of trust in favor of Fremont Investment and Loan.

This appeal arises from a March 14, 2006, renewal and extension to the loan agreement. On that date, the Thompsons again entered into a renewal and extension, this time with New Century Mortgage Corporation. As part of this agreement, the Fremont lien was paid off along with a $9,000 second lien Texas home equity loan in favor of Bank of America.[1] The Thompsons executed a promissory note and deed of trust in favor of New Century, and America's

---

[1] It is unclear from the record as to when the Thompsons obtained this home equity loan from Bank of America or the circumstances surrounding this loan.

2

No. 14-10084

Servicing Company ("ASC"), a subsidiary of Wells Fargo Bank, N.A., serviced the loan.

According to the Thompsons, the renewal was closed using conventional loan documentation, which was inappropriate because this loan paid off the Bank of America home equity loan, thereby making the New Century loan a home equity loan as well. Due to this error, the Thompsons claim that they can no longer refinance this renewal at the market rate, and the loan does not satisfy the requirements of Section 50.

The Thompsons notified New Century and ASC about these problems on November 8, 2011. They subsequently learned that their loan had been transferred to Deutsche. Jonathan Finke, counsel for the Thompsons, sent Deutsche a copy of the letter to New Century identifying their issues with the loan, on January 19, 2012.[2] Notably, Finke mailed the letter to Deutsche's address at "1761 East Saint Andrew Place, Santa Ana, California, 92705-4934." The record now establishes that this California address is Deutsche's principal business office for purposes of receiving service of process. It does not appear that Deutsche responded to this letter, but ASC submitted a letter denying liability, which prompted the Thompsons to file suit.

Thus, the Thompsons initiated this lawsuit in state court in Tarrant County, Texas, on April 9, 2012. Their petition alleged that both Deutsche and ASC violated Section 50. After filing the petition, they served ASC, but they never served Deutsche. Instead, they embarked on several unsuccessful attempts.

In their petition, the Thompsons alleged that Deutsche was a foreign corporation that could be served by the Texas Secretary of State. They

---

[2] The Thompsons have been represented throughout this litigation by the Jones Hassett law firm. Finke signed this letter to Deutsche, and it appears from the record that he was primarily responsible for the unsuccessful service attempts.

provided the Secretary of State with a North Carolina address, however, and they received notice on April 24, 2012, that the petition was not deliverable to that address. Next, the Thompsons' counsel sought to serve Deutsche through CT Corporation System, claiming that CT was Deutsche's agent in Texas. CT sent a letter to the Thompsons' counsel indicating that it was not Deutsche's agent.[3] Thus, the Thompsons' counsel was aware that he had not actually served Deutsche.

Nonetheless, the Thompsons moved for a default judgment against Deutsche in state court on June 11, 2012.[4] As Deutsche points out, the Thompsons included an exhibit indicating that the petition had been mailed to CT, thus suggesting that Deutsche was properly served. The state court entered a default judgment against Deutsche on June 22, 2012. The clerk of court submitted a notice of default to CT, which it returned to the court. At that time, the default was a partial judgment, as ACS remained in the action.

On August 31, 2012, the Thompsons filed a notice of non-suit as to ASC that was stamped as filed in the state court on September 4, 2012. The state court judge granted the nonsuit as to ASC on September 4, 2012, and ordered "that the interlocutory default judgment entered against [Deutsche] on June 22, 2012, became final upon the filing of Plaintiffs' notice of nonsuit on August 31, 2012."

Deutsche apparently learned of the judgment for the first time on December 27, 2012, when an attorney forwarded correspondence regarding the judgment to Deutsche. On January 17, 2013, Deutsche removed the action to

---

[3] Apparently, CT is the registered agent for a similarly named Deutsche entity, but the Thompsons have not argued as part of this appeal that CT is the appropriate agent for service on *this* Deutsche entity.

[4] Michael Hassett, one of the Thompsons' lawyers, signed this motion, but Finke was also listed as an attorney of record.

No. 14-10084

federal court. In federal court, the Thompsons filed a motion to remand, and Deutsche filed a motion for relief from the default judgment under Federal Rule of Civil Procedure 60. The district court denied the Thompsons' motion and granted Deutsche's motion. Thereafter, Deutsche filed a motion to dismiss on the ground that the Thompsons' claims are barred by the applicable statute of limitations. The district court granted the motion to dismiss, and the Thompsons filed a timely appeal.

## II.

We review each of the issues presented in this appeal de novo. First, we review whether the district court had subject matter jurisdiction over the action and, relatedly, whether it properly vacated the default judgment against Deutsche under Rule 60(b)(4). *See McLaurin v. United States*, 392 F.3d 774, 777 (5th Cir. 2004) (explaining that denial of a motion to remand is reviewed de novo); *see also Recreational Props., Inc. v. Sw. Mortg. Serv. Corp.*, 804 F.2d 311, 314 (5th Cir. 1986) (noting that the standard of review under Rule 60(b)(4) is de novo because it is a per se abuse of discretion for a court to deny a motion to vacate a void judgment).

Upon concluding that the district court had jurisdiction and that it properly set aside the default judgment, we then review the district court's grant of Deutsche's Rule 12(b)(6) motion to dismiss de novo. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502 (5th Cir. 2014). Although Deutsche premises its motion on the statute of limitations, which is usually pled as an affirmative defense, "[a] statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

5

No. 14-10084

III.

The Thompsons argue that the district court erred in denying their motion to remand and vacating the judgment against Deutsche because, the Thompsons urge, the case was not properly removable. We begin with a discussion of the relevant law, apply the law of removal to this case, and conclude by holding that the default judgment was properly vacated.

A.

1.

The federal courts' removal jurisdiction flows from Congress's statutory grant, which provides:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a). Relevant here, Congress has limited the time in which a defendant may remove a case, as

> [t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

*Id.* § 1446(b)(1). Additionally, a defendant may remove a case that is not initially removable within 30 days of receipt through service of a copy of the pleading indicating that the case has become removable. *Id.* § 1446(b)(3). Finally, Congress established an additional limitation in cases where removal is based on diversity of citizenship under 28 U.S.C. § 1332, as such actions may not be removed "more than 1 year after commencement of the action, unless

6

the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." *Id.* § 1446(c).

These statutes clearly provide that a defendant's right to removal runs from the date on which it is formally served with process. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48 (1999). Put another way, "one becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* at 350. A defendant has no obligation to appear in court or defend an action *before* it is formally served with process directing it to appear before that forum. *Id.* Only after a party is subject to the powers of a court, must it seek to effect removal. To the point, the defendant in *Murphy Brothers* was *aware* of the pending litigation when it received a courtesy copy of the complaint from the plainitff, but the defendant was not required to remove the action until it was formally served. *See id.* at 347–48.

This general rule applies even in cases where the state court litigation proceeds to a default judgment. Various courts recognize that an unserved defendant retains the right to remove an action once it learns of the litigation. *See, e.g., Price v. Wyeth Holdings Corp.*, 505 F.3d 624, 628–30 (7th Cir. 2007) (rejecting the plaintiff's argument for remand when the plaintiff's counsel "reopened" litigation that it had dismissed years earlier to obtain a default judgment without serving the defendants and the defendants promptly removed upon learning of the default judgment); *Munsey v. Testworth Labs., Inc.*, 227 F.2d 902, 903 (6th Cir. 1955) (per curiam) (permitting removal of an action following entry of a default judgment four months after the defendant received a summons but only four days after the plaintiff had filed a declaration in the state court, which was the necessary pleading); *Ware v. FleetBoston Fin. Corp.*, 180 F. App'x 59, 62–63 (11th Cir. 2006) (per curiam)

No. 14-10084

(finding that a defendant could remove an action that was on appeal to the state's highest court because it had never been properly served with process). To be sure, holding otherwise would be inconsistent with the Supreme Court's decision in *Murphy Brothers* because the defendant would have to preserve its right of removal *before* it is actually subject to the formal powers of a court.

### 2.

### a.

Turning to this appeal, we first consider whether Deutsche was properly served with the Thompsons' petition. "[T]he term 'service of process' is defined by state law," and thus we must evaluate propriety of service under Texas law. *City of Clarksdale v. BellSouth Telecomms., Inc.*, 428 F.3d 206, 210 (5th Cir. 2005). The district court evaluated the service attempts under Texas law and concluded that "[a]fter review of all of the parties' briefs regarding these motions, the Court agrees with Deutsche that the Thompsons' service attempts were ineffective." The Thompsons have failed to challenge this finding on appeal. Indeed, they appear deliberately to evade the issue in their briefing. For example, the Thompsons state in their "Statement of Facts" that "[s]ervice of the Petition was accomplished on ASC by serving its registered agent, CSC-Lawyers Inc." They then omit any discussion as to service on *Deutsche*, and only go on to note that the state court "rendered a judgment in the Thompsons['] favor against [Deutsche]." By failing to defend their service efforts on Deutsche, they have abandoned any argument that Deutsche was properly served. *See Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("An appellant abandons all issues not raised and argued in its *initial* brief on appeal.").[5]

---

[5] We note that even if we considered the issue, the record is clear that Deutsche was not properly served. Service through the Secretary of State, the Thompsons' first method, must "contain a statement of the name and address of the nonresident's home or home office."

No. 14-10084

Because Deutsche was never served, its thirty-day period of removal under § 1446(b)(1) never began to run. At the time Deutsche learned of the default judgment, the case was removable under § 1441 because a federal court would have proper diversity jurisdiction under § 1332. The amount in controversy exceeded $75,000, and the Thompsons and Deutsche were citizens of different states.[6] *See* 28 U.S.C. § 1332(a)(1). Finally, the Thompsons filed their suit on April 9, 2012, and Deutsche removed it on January 17, 2013, well within the one-year time limit for diversity cases under § 1446(c). As such, we need not consider whether the Thompsons acted in bad faith to avoid federal jurisdiction.

b.

The Thompsons point us to this Court's decision in *Oviedo v. Hallbauer*, 655 F.3d 419 (5th Cir. 2011), and argue that this case supports their position that removal was untimely. In *Oviedo*, the plaintiff brought a medical malpractice claim against a clinic and two physicians in state court. The plaintiff non-suited the clinic and obtained a default judgment against the two physicians after they failed to answer or participate in the litigation. The state court held a hearing on damages and also concluded that the defendants were

---

Tex. Civ. Prac. & Rem. Code § 17.045(a). Deutsche provided an uncontested declaration stating that this address is a Santa Ana, California, address. The Thompsons sought to serve Deutsche at a North Carolina address and received notification that the petition was "not deliverable as addressed, unable to forward." As to the second method, service through CT Corporation, the Thompsons received notice from CT that it was *not* Deutsche's agent. Finally, the district court also rejected the Thompsons' third argument, that service on ASC was service on Deutsche. A citation must be "directed to the defendant." Tex. R. Civ. P. 99(b)(8). The citation to ASC was directed only to it with no mention of Deutsche. Thus, we agree with the district court that Deutsche was never properly served.

[6] The Court need not consider ACS's citizenship, which is unclear from the record, because ACS was not a party at the time of removal. *See Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 390–91 (5th Cir. 2000) (recognizing that a case becomes removable when non-diverse parties are dismissed, subject to the one-year limitation on removal).

properly served.  Several weeks after the state court entered its judgment, the United States filed a motion seeking a new trial on behalf of the physicians, arguing that they were federal employees subject to suit only under the Federal Tort Claims Act.[7]  655 F.3d at 421.  The state court failed to issue a written ruling on the motion, and the motion was overruled by operation of law seventy-five days after the signing of the judgment.  *Id.*  The United States allowed the time for filing an appeal and the time of the state court's plenary jurisdiction to expire without taking any further action.  *Id.* at 422.  On February 3, 2010, the United States then removed the action to federal court. *Id.*

The *Oviedo* Court held that the case was not removable at that point because "[r]emoval is simply not possible after a final judgment and the time for direct appellate review has run."  *Id.* at 424.  The Court reasoned that "by the time the government filed its notice of removal in this case, there was no pending case to remove, inasmuch as nothing remained for the state courts to do but execute the judgment."  *Id.* at 423–24.  The Thompsons rely on this language and argue that the case here was not removable because there was no "action" to remove.

Our decision in *Oviedo* involved significantly different and consequential facts from those presented in this appeal.  Unlike the United States in *Oviedo*, Deutsche neither appeared nor participated in the state court litigation, in any respect, until it filed its notice of removal after it learned of the default judgment.  Critically, Deutsche has both asserted throughout the litigation that it was not properly served, and presented undisputed record evidence

---

[7] The United States apparently argued in its motion that service on the two physicians was improper.  *Oviedo*, 655 F.3d at 421.  It is less clear that the United States raised its service argument in the context of defending its subsequent removal of the action.  The *Oviedo* Court did not mention *Murphy Brothers* and did not discuss § 1446(b).

demonstrating this assertion. In *Oviedo*, the Court confronted a facially valid judgment entered against two individual defendants in which the United States had attempted to intervene even though the judgment was not facially enforceable against it. *Id.* at 424. In this case, however, the Thompsons clearly obtained a judgment that is enforceable against Deutsche without properly serving it. Thus, we conclude that *Oviedo* is no authority to bar removal in this case.

Moreover, insofar as *Oviedo* might apply, it does not preclude removal here because the time for direct appellate review had not run. Because Deutsche never appeared in this action, it was entitled to file a restricted appeal in the state court within six months of entry of the judgment. *See* Tex. R. App. Proc. 30 ("A party who did not participate—either in person or through counsel—in the hearing that resulted in the judgment complained of and who did not timely file a postjudgment motion . . . may file a notice of appeal within the time permitted by Rule 26.1(c)."); Tex. R. App. Proc. 26.1(c) ("[I]n a restricted appeal, the notice of appeal must be filed within six months after the judgment or order is signed."). As the Texas courts have explained, "[a] restricted appeal is a *direct attack* on a default judgment." *Eguia v. Eguia*, 367 S.W.3d 455, 458 (Tex. App.–Corpus Christi, 2012) (emphasis added). Such an appeal must be brought "within six months after the *final judgment* is signed." *Id.* (emphasis added).

Here, the state court granted the Thompsons' motion for nonsuit as to ACS on September 4, 2012, and it stated that "the interlocutory default judgment entered against Deutsche National Trust Company on June 22, 2012, became final upon the filing of Plaintiffs' notice of nonsuit on August 31, 2012." Deutsche removed this action on January 17, 2013, well within six

months after the judgment became final.[8]  Although the Thompsons point out that Deutsche did not actually appeal the judgment, whether Deutsche appealed is irrelevant under *Oviedo*.  The *Oviedo* Court focused on whether "the case is final for purposes of direct review in the state court system" and not on whether a defendant actually exercised such appellate remedies.  655 F.3d at 425.

In sum, we conclude that Deutsche's removal period did not begin to run under § 1446(b) because it was never properly served.  The case was therefore removable, and Deutsche timely removed the case to the federal court.

B.

Our holdings as to jurisdiction further lead us to conclude that the district court properly vacated the state court's default judgment.  A district court must set aside a void judgment.  Fed. R. Civ. P. 60(b)(4).[9]  "If a court lacks jurisdiction over the parties because of insufficient service of process, the judgment is void and the district court must set it aside." *Recreational Props., Inc. v. Sw. Mortg. Serv. Corp.*, 804 F.2d 311, 314 (5th Cir. 1986).  As we explained above, the Thompsons have abandoned any argument that Deutsche was properly served with the Thompsons' petition under Texas law.  Accordingly, the district court properly granted Deutsche's motion to vacate the default judgment.

---

[8] We note that there are two possible dates when the judgment became final: August 31, 2012, when the Thompsons dated and attempted to file their notice of nonsuit, or September 4, 2012, when the state court signed its order.  It appears to us that these documents were formally received by the state court on September 4, but we need not decide the actual date when the judgment became final for purposes of this appeal.

[9] Rule 60 applies upon removal because the district court must apply the Federal Rules following removal.  *See McIntyre v. K-Mart Corp.*, 794 F.2d 1023, 1025 (5th Cir. 1986).

No. 14-10084

IV.

Now that we have established our jurisdiction and held that the initial default judgment was void, we consider whether the district court properly dismissed this action under Federal Rule of Civil Procedure 12(b)(6). This question requires us to apply the applicable statute of limitations and to determine whether the doctrine of fraudulent concealment tolls the limitations period.

A.

The Thompsons allege that the 2006 loan failed to comply with various aspects of Section 50. For example, they allege that they never received a copy of the final application and all executed documents under Section 50(a)(6)(Q)(v), that they did not receive the disclosures required by Section 50(a)(6)(Q)(vi), that they were not notified of their opportunity to rescind under Section 50(a)(6)(Q)(viii), and that they were not provided with an acknowledgment executed by both parties as to the fair market value of the property as required by Section 50(a)(6)(Q)(ix).

Although the Texas Constitution is silent as to the limitations period for claims based on constitutional violations, the Texas Code provides that "[e]very action for which there is no express limitations period, except an action for the recovery of real property, must be brought not later than four years after the day the cause of action accrues." Tex. Civ. Prac. & Rem. Code § 16.051. We have held that this four-year limitations period applies "to constitutional infirmities under Section 50(a)(6)." *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 674 (5th Cir. 2013). As to accrual, there are two possible standards—the injury rule, which runs from the date of the legal injury, and the discovery rule, which runs from when the plaintiff knew or should have known of the facts giving rise to the claim. *See id.* at 675. This Court applies

No. 14-10084

the injury rule on claims brought under Section 50, and the limitations period runs from the date of closing. *Id.*

We can unmistakably discern that the limitations period has run by consulting the face of the petition. The Thompsons alleged that they entered into the loan with New Century on March 14, 2006. The petition was stamped as filed in the state court on April 9, 2012, over six years after the closing of the loan. Thus, on its face, the limitations period has run, and the Thompsons are barred from pursuing this action.

B.

The Thompsons argue, however, that Deutsche is estopped from raising the limitations issue because Deutsche fraudulently concealed its wrongful conduct. "Fraudulent concealment tolls limitations 'until the claimant, using reasonable diligence, discovered or should have discovered the injury.'" *Priester*, 708 F.3d at 676 (quoting *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 750 (Tex. 1999)). This Court applies a four-prong test for fraudulent concealment under Texas law, under which the plaintiff must demonstrate: "'(1) the existence of the underlying tort; (2) the defendant's knowledge of the tort; (3) the defendant's use of deception to conceal the tort; and (4) the plaintiff's reasonable reliance on the deception.'" *Id.* (quoting *Holland v. Thompson*, 338 S.W.3d 586, 596 (Tex. App.–El Paso 2010)). At the pleading stage, the Thompsons need only allege sufficient facts that, when taken as true, state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

We agree with Deutsche that the Thompsons failed to allege any facts suggesting that they could satisfy the deception element of fraudulent concealment. In their briefs, the Thompsons rely on their general descriptions of the loan's constitutional defects coupled with their allegations that Deutsche and its predecessors refused to acknowledge that the loan failed to comply with

Section 50.  We found a lack of deception on similar facts in *Priester*.  In *Priester*, the plaintiffs argued that the loan documents were signed in an improper place and that the lender failed to make appropriate disclosures.  We explained:

> There is no evidence, however, that the defendants used "deception" to conceal any constitutional violations.  First, it would be impossible to conceal the fact that the closing occurred in the Priesters' living room.  Second, the defendants did not "conceal" the fact that they did not provide the required constitutional notices.  It is difficult to imagine how a party would conceal a lack of disclosure.

708 F.3d at 677.  As in *Priester*, the Thompsons raise a number of insufficient disclosures and point to incorrect paperwork.  When the Thompsons closed the loan with New Century in 2006, they were aware it was on conventional paperwork and they were aware of the disclosures they did or did not receive at that time.  At most, they were unaware that any of these actions violated the *law*.  They have not plausibly claimed that Deutsche or its predecessors *deceived* them as to the essential facts of the transaction.

The Thompsons cite *USPPS, Ltd. v. Avery Dennison Corp.*, 326 F. App'x 842 (5th Cir. 2009), in support of their position.  In that unpublished decision, USPPS alleged that its chief executive received assurances from a potential business partner that its recommended law firm would help USPPS obtain a patent on its invention.  326 F. App'x at 844–45.  USPPS then alleged that, in reality, the business partner and law firm collaborated to sabotage the patent application process, ultimately abandoning the process in 2003.  *Id.*  As a result, the company was then able to manufacture the product itself without a licensing agreement with USPPS.  *Id.*  A panel of this Court concluded that "while we can say that USPPS knew in May 2003 that it had suffered a loss [when the patent application had been abandoned], we cannot now say that

USPPS knew or should have known in May 2003 that it had been wrongfully injured." *Id.* at 850.

*USPPS*, as an unpublished opinion, is non-binding precedent, but even so, it is distinguishable in several respects that have consequences here.  In *USPPS*, the defendants plausibly deceived the plaintiff as to the critical facts explaining *why* the patent application failed.  Although USPPS knew that its patent application had been abandoned, it was not aware that the process failed because the defendants sabotaged the process.  By contrast, the Thompsons were aware of the facts surrounding this loan.  They were aware that they did not receive appropriate disclosures and aware that the loan was on improper forms.  At most, they were unaware that this conduct violated the law.  Thus, fraudulent concealment does not toll the statute of limitations in this case.

V.

In sum, we hold that Deutsche could remove this case to federal court, and the district court committed no error in denying the Thompsons' motion to remand.  Furthermore, the district court properly vacated the default judgment in favor of Deutsche and properly granted Deutsche's motion to dismiss the Thompsons' petition under Rule 12(b)(6).  Thus, the district court is, in all respects,

AFFIRMED.